**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard A. GINSBURG,
Defendant-Appellant.**

**No. 84–1765.**

United States Court of Appeals,
Seventh Circuit.

Argued June 17, 1985.
Decided Sept. 13, 1985.

---

Scott Turow, Deputy Chief U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant-appellant.

Thomas A. Corfman, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, BAUER, WOOD, CUDAHY, ESCHBACH, POSNER, COFFEY, FLAUM, EASTER-BROOK and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

This appeal presents the issue of whether the government must prove beyond a reasonable doubt the existence, at the time of a defendant's conviction, of any interest that the defendant has acquired in violation of section 1962 of the Racketeer Influenced and Corrupt Organizations chapter of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 *et seq.* (1982) ("RICO"), before the government can obtain a forfeiture of that interest under section 1963(a)(1) of RICO. A panel of this court, in reliance on prior decisions of this circuit, held in an unpublished order that the government did bear such a burden, *United States v. Ginsburg*, 753 F.2d 1079 (7th Cir.1985), and a majority of the court subsequently voted to rehear the case *en banc*. We now hold that section 1963(a)(1) imposes no such burden of proof on the government, and accordingly affirm the district court's judgment ordering defendant Richard A. Ginsburg to forfeit the sum of $225,000 to the United States.

## I.

Because the facts of this case are not in dispute on appeal, we will summarize them briefly. Defendant Ginsburg and his codefendant Theodore J. Schmidt were partners in a law firm that represented clients before the Cook County Board of (Tax) Appeals between January 1976 and September 1982. It was stipulated that the firm received $450,000 in legal fees during that period from cases that were processed at the Board of (Tax) Appeals. On September 9, 1982, Ginsburg and Schmidt were charged in an indictment with nineteen counts of mail fraud (18 U.S.C. § 1341) and one count of violating section 1962(c) of RICO. The indictment alleged that Ginsburg and Schmidt had bribed employees at the Board of (Tax) Appeals to obtain favorable treatment of their cases.

Following a jury trial, Ginsburg was found guilty on all twenty counts. The jury also returned a special verdict on count 20, the RICO count, finding that Ginsburg had an interest in the legal fees received by the firm of Schmidt & Ginsburg between January 1976 and September 1982 for cases processed at the Board of (Tax) Appeals. Ginsburg was sentenced to five years probation on each of counts 1 through 20, to run concurrently, with the condition that he make restitution in the sum of $150,000 and provide 1,000 hours of community service. He was further ordered to forfeit his one-half interest in the firm's legal fees, or $225,000, to the government under RICO's forfeiture provision, 18 U.S.C. § 1963(a)(1) (1982). The amount of restitution was to be credited against the forfeiture.

The government presented no evidence at trial that Ginsburg possessed or controlled, at the time of his conviction, the money that he had received in legal fees between 1976 and 1982. On appeal, Ginsburg does not contest his conviction or assert any trial errors, but rather argues that the trial court's forfeiture order must be vacated because the government failed to prove beyond a reasonable doubt that the legal fees he had received between 1976 and 1982 were still in existence at the time of his conviction in March 1984.

## II.

At the time of Ginsburg's conviction, section 1963(a) provided that

[w]hoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in

violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a) (1982).[1] In determining the scope of this section, we must "look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). We believe that the language of section 1963(a)(1) is clear—whoever violates section 1962 of RICO "shall forfeit to the United States ... any interest he has acquired ... in violation of section 1962." Nothing in the language of section 1963(a)(1) provides or even suggests the limitation that the interest acquired in violation of section 1962 must be in existence at the time of conviction before it can be forfeited.

The defendant argues that despite its plain language, section 1963(a)(1) must be read as imposing on the government the burden of proving the existence, at the time of conviction, of a defendant's profits and proceeds from racketeering activity. This argument is primarily based on the fact that RICO's criminal forfeiture provision is an *in personam* proceeding, rather than a civil *in rem* proceeding against the property itself, and thus that the government's interest in the property does not attach until the time of the defendant's

conviction of the crime for which the forfeiture is sought. Although we agree with the defendant's premises, we cannot agree with his conclusion that because the government's interest does not attach until the time of conviction, it is limited to whatever proceeds are left at the time of conviction.

■ Congress's use of the criminal forfeiture sanction in RICO revived a punishment that had not been used in the United States since 1790. *See United States v. McManigal,* 708 F.2d 276, 288 (7th Cir.), *vacated on other grounds,* —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983); Reed, *Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes,* 22 Am.Crim.L.Rev. 747, 747–48 (1985). As the Fifth Circuit stated in *United States v. L'Hoste,* 609 F.2d 796 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980):

> The forfeiture penalty incorporated in section 1963 differs from other presently existing forfeiture provisions in federal statutes. Under other statutes, the forfeiture proceeding is in rem against the property, since the property being forfeited is itself considered the offender, and the forfeiture is no part of the punishment for the criminal offense. By enacting section 1963, however, Congress revived the concept of forfeiture as a criminal penalty against the individual, since the proceeding is in personam against the defendant and the forfeiture is part of the punishment.

609 F.2d at 813 n. 15. *See also United States v. Conner,* 752 F.2d 566, 576 (11th Cir.1985), *petition for cert. filed,* 53 U.S. L.W. 3870 (U.S. May 24, 1985) (No. 84–1853); *United States v. Kravitz,* 738 F.2d

---

1. Congress amended this provision in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, § 302, 98 Stat. 2040 (1984), to clarify that the phrase "any interest" in section 1963(a)(1) includes the proceeds, income, or profits derived from a pattern of racketeering activity. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 199, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3382. The amendment to section 1963(a) has no effect on this case, however, since it was

already settled law that section 1963(a)(1) provides for the forfeiture of the profits and proceeds of racketeering activity, *see Russello v. United States,* 464 U.S. 16, 22, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); *United States v. Roberts,* 749 F.2d 404, 409 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985), and thus the legal fees received by Ginsburg between 1976 and 1982.

102, 106 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985); *United States v. Cauble,* 706 F.2d 1322, 1347, 1349 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Huber,* 603 F.2d 387, 396 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). RICO forfeiture is a punishment imposed on a guilty defendant. It deprives that defendant of all of the profits or proceeds that he has acquired through racketeering activity, regardless of whether those assets are themselves "tainted" by use in connection with the illicit activity. *See* Reed, *supra,* at 748 (the scope of an *in personam* forfeiture is defined by the scope of the defendant's criminal conduct).

■ Although the government's interest in property subject to criminal forfeiture does not attach until the defendant is convicted of the crime for which the forfeiture is imposed, *see McManigal,* 708 F.2d at 289 n. 6 (government's right to the property attaches on conviction), it does not follow, as the defendant argues, that the extent of the government's interest is limited to whatever the defendant still has in his possession at the time of conviction or that the government bears the burden of proving that the dollars obtained in violation of section 1962, often many years earlier, are the same dollars in the defendant's bank account at the time of conviction. The characteristics of criminal forfeiture argue against that conclusion. Since RICO forfeiture is a sanction against the individual

defendant rather than a judgment against the property itself, "it follows the defendant as a part of the penalty and thus it does not require that the government trace it, even though the forfeiture is not due until after conviction." *United States v. Conner,* 752 F.2d at 576. It therefore does not matter whether the government recovers the identical dollars that the defendant received in violation of section 1962, as long as the amount that the defendant acquired in violation of the statute is known. *Id.*

In short, while the government's interest in the profits or proceeds of racketeering activity does not *attach* until conviction, its interest *vests* at the time of the act that constitutes the section 1962 violation and cannot subsequently be defeated, as far as section 1963(a)(1) is concerned, if the defendant dissipates or transfers away the proceeds subject to forfeiture.[2] The government's right to forfeit the profits or proceeds of racketeering activity under section 1963(a)(1) is therefore not limited to whatever is left over or unspent at the time of conviction, but instead includes the entire amount that was acquired by the defendant in violation of RICO.

Having concluded that section 1963(a)(1) is clear and unambiguous on its face, we now turn to the legislative history of RICO. " '[O]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure" from the language of a statute when that language is plain and unambiguous. *United States*

2. It may of course be possible for a defendant to defeat forfeiture as a practical matter by transferring away or hiding his assets in anticipation of his conviction. This was one of the problems that Congress sought to address in the 1984 amendments to section 1963. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 195–96, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3378–3379. The Comprehensive Crime Control Act attempted to alleviate the problem of defendants defeating forfeiture by removing, transferring, or concealing their assets prior to conviction by expanding the government's ability to obtain restraining orders, setting out clear authority for voiding improper preconviction transfers of assets subject to criminal forfeiture, and authorizing the forfeiture of substitute assets when the property

originally subject to forfeiture is unavailable at the time of conviction. *Id.* at 197–98, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3380–3381. (The substitute asset provision was added by § 302 of the Act but deleted by § 2301(b), so never took effect. Pub.L. No. 98–473, tit. II, §§ 302, 2301(b), 98 Stat. 2040–41, 2192 (1984). The reason for the last-minute deletion of what would have been § 1963(d) is unclear.). It must be emphasized that the fact that section 1963 as originally enacted proved to be somewhat *ineffectual in preventing defendants from placing their assets beyond the reach of the government,* and thus preventing forfeiture as a practical matter, does not mean that the *government's legal interest in those assets was thereby defeated,* as defendant suggests.

v. *Albertini,* — U.S. —, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) (quoting *Garcia v. United States,* — U.S. —, 105 S.Ct. 479, 482–83, 83 L.Ed.2d 472 (1984)). We believe that the legislative intent behind RICO's forfeiture provision is not contrary to, and in fact strongly supports, our interpretation of section 1963(a)(1). As virtually every court that has interpreted any provision of RICO has recognized, RICO's legislative history clearly demonstrates that the statute was intended as a comprehensive and unprecedented attack on organized crime and its economic bases. *See Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985); *Russello v. United States,* 464 U.S. at 26, 104 S.Ct. at 302. Congress's declared purpose in enacting RICO was "to seek the eradication of organized crime in the United States by ... establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub.L. No. 91–452, § 1, 84 Stat. 923 (1970). Congress further directed that "[t]he provisions of this title shall be liberally construed to effectuate its remedial purposes." *Id.* § 904(a), 84 Stat. 947. The statute is replete with words and phrases of extraordinary breadth, *see Sedima,* 105 S.Ct. at 3286; *Russello,* 464 U.S. at 21–22, 104 S.Ct. at 302; *Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 390 (7th Cir.1984), *aff'd,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), further evidencing the congressional intent to enact a statute of exceedingly broad scope.

The goal of RICO's forfeiture provision was "to remove the profit from organized crime by separating the racketeer from his dishonest gains." *Russello,* 464 U.S. at 28, 104 S.Ct. at 303. The defendant argues that if the racketeer's profits are no longer in existence at the time of conviction, then they are no longer available to the defendant and thus that the remedial purpose of the statute will have been served. To the extent that our prior holdings in *McManigal,* 708 F.2d at 289 (reaffirmed in *United States v. McManigal,* 723 F.2d 580, 581

(7th Cir.1983)), and *United States v. Alexander,* 741 F.2d 962, 968 (7th Cir.1984), support this result, we overrule those decisions and reject the defendant's contention. What the defendant's argument overlooks is the fact that a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account. Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes. In order to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession. To require less would seriously undermine the intended deterrent effect of RICO forfeiture; a racketeer would have no incentive to discontinue his racketeering activity if he could freely use the proceeds of that activity to enrich his life up until the moment of his eventual conviction, at which time he would only be required to forfeit whatever was left over. In sum, the legislative history of RICO does not support the defendant's interpretation of section 1963(a)(1) as requiring the government to trace the proceeds of racketeering activity in order to prove that they are still in existence at the time of conviction.

The defendant's construction of section 1963(a)(1) is further contrary to the intent of RICO's forfeiture provision because it would render the statute, as a practical matter, a virtual nullity. *Cf. Sedima,* 105 S.Ct. at 3286 (rejecting narrow reading of § 1964(c) of RICO that would in effect eliminate the section from the statute). First, defendants would be encouraged to spend or transfer away their forfeitable interests prior to conviction, and second, it would be next to impossible for the government ever to overcome, especially where

money is involved, the tracing burdens that the defendant's position would require. We therefore reject the defendant's interpretation of section 1963(a)(1) as having no basis in the plain language of the section and as being contrary to the purposes and intended effect of forfeiture under RICO.

We note that Congress amended RICO's forfeiture provision as part of the Comprehensive Crime Control Act of 1984, so that it now provides that "[a]ll right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section." 18 U.S.C.A. § 1963(c) (West Supp.1985). This and other amendments to section 1963, along with the legislative intent behind the changes, further support our conclusion that Congress never intended to impose on the government the burdens of tracing and proof that would be necessitated by the defendant's position in this case. While it is true that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," *Russello*, 464 U.S. at 26, 104 S.Ct. at 302 (quoting *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960)), we believe that the 1984 amendments merely confirm the already clearly-established legislative intent behind RICO's forfeiture provision, which was to aid, rather than impede, the government's efforts to punish and deter racketeering activity by removing the profit from organized crime.

### III.

In conclusion, we hold that nothing in the plain language or the legislative history of section 1963(a)(1) imposes on the government the burden of proving that the proceeds of racketeering activity are still in existence able the time of a defendant's conviction before the government can obtain a forfeiture of those proceeds under RICO. We therefore affirm the district court's judgment ordering the defendant to forfeit to the United States the proceeds of his illegal activity.

CUMMINGS, Chief Judge, concurring.

Because of the above-quoted clarifying amendment to RICO's forfeiture provision, I join in the affirmance of the district court's judgment.

CUDAHY, Circuit Judge, concurring.

I concur in the result and in the majority's analysis but I think certain points would be helpful in focusing on the precise issue being resolved here.

In *United States v. McManigal*, 708 F.2d 276 (7th Cir.), *vacated*, —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983) (*McManigal I*), the government petitioned for forfeiture under two different theories. Under the first theory, it claimed that the legal fees were proceeds of an interest acquired in violation of section 1962, and so were forfeitable under section 1963(a)(1). Under the second theory, it claimed that the defendant's share of the law firm's accounts receivable was an interest in the enterprise, and thus forfeitable under section 1963(a)(2). These were clearly alternative theories; either would support forfeiture. This court held that proceeds were not an interest under section 1963(a)(1), and that an interest in an enterprise must be in existence at the time of conviction to be forfeitable under section 1963(a)(2). Because neither theory was satisfied, the forfeiture order was vacated.

In *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), the Supreme Court held that a forfeitable interest under section 1963(a)(1) included proceeds and profits of an interest acquired in violation of section 1962. Thus our holding on the first theory in *McManigal I* was overruled. The Court vacated *McManigal I* for reconsideration in light of *Russello*.

In *United States v. McManigal*, 723 F.2d 580 (7th Cir.1983)(*McManigal II*), this court reversed the district court's order forfeiting $99,700 to the United States. *McManigal II* is overruled today by the *en banc* majority's opinion insofar as it concerns the first theory, which deals with section 1963(a)(1). However, the holding in *McManigal II* dealing with the second theo-

ry is not overruled. That theory holds that under section 1963(a)(2) an interest in an enterprise is not forfeitable unless it is in existence at the time of conviction.[1] Section 1963(a)(2) was not at issue in *Russello*, and the Supreme Court there was careful to distinguish what it called the narrower section 1963(a)(2) from the broader section 1963(a)(1).

RIPPLE, Circuit Judge, with whom, FAIRCHILD, Senior Circuit Judge, joins, dissenting.

Today, the Court establishes a broad remedial device which Congress, at least at the time of the passage of the statute in question,[1] was unwilling to provide. While posing a narrow question couched in procedural language, the Court actually answers a considerably broader question. The Court frames the issue as whether the government, before obtaining a forfeiture, must prove beyond a reasonable doubt the existence, at the time of the defendant's conviction, of any interest that the defendant acquired in violation of section 1962 of the Racketeer Influenced and Corrupt Organizations chapter of the Organized Crime Control Act of 1970 (RICO), 18 U.S.C. §§ 1961–68 (1982). However, the Court answers a broader question by holding that the government need not establish *any* relationship between the interest ordered forfeited in the judgment upon conviction and the RICO violation. Consequently, the Court allows the government to reach the defendant's personal assets and to seize any property equivalent to $225,000, whether or not the assets have any connection with the illegal enterprise. The Court provides the government with a valuable and possibly necessary weapon in the war on organized crime. However, the proper inquiry is not whether the government needs this weapon but whether Congress, when it enacted the statute which governs this

case, authorized a forfeiture of property not derived from a violation of section 1962.

The Court's reluctance to give a comparatively restrictive interpretation to a section of RICO is understandable. Both the executive and the legislative branches of government have invested a great deal of time, money and energy in dealing with a serious national problem which requires an approach different from that used to combat ordinary criminal activity. Indeed, the Congress has specifically mandated that the Judiciary interpret the statute so as to effectuate its broad remedial purposes. Pub.L. No. 91–452, § 904(a), 84 Stat. 947 (1970)—a mandate which the Supreme Court has emphasized consistently in its own interpretation of the statute. *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, ——, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985); *Russelo v. United States,* 464 U.S. 16, ——, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983). These considerations are quite important in interpreting all sections of RICO. They are only the beginning of the inquiry, however, and do not, by themselves, provide a sufficient framework for the interpretation of any specific section. A more precise analysis of the text of the particular section and its legislative history is necessary. We therefore turn to an examination of the text of the forfeiture provision, as it existed at the time of Ginsburg's conviction, and of the relevant legislative history.

I.

The Court holds that its broad interpretation of section 1963(a)(1) is required by the "plain language" of this section. However, the statute is hardly clear or unambiguous. The words of the statute—standing alone—do not manifest a congressional intent to

---

**1.** This second theory would not have supported forfeiture in *McManigal II* because no accounts receivable were in existence at the time of defendant's conviction.

**1.** As part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473 (1984), Congress

amended 18 U.S.C. § 1963. Since the majority did not reach the question of the retroactive application of the amended statute or whether such retroactive application would violate the ex post facto clause, we decline to address those issues as well.

subject to forfeiture the defendant's property owned at the time of conviction or acquired thereafter, even if it has no connection to the illegal enterprise. Indeed, the ambiguity of the statutory language has, until now, been acknowledged by commentators who have critiqued it,[2] courts, including this one, which have interpreted it,[3] and by a later Congress which found that its ambiguity was so pervasive as to require new legislation.[4]

At the time of Ginsburg's conviction, section 1963(a) provided:

> Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a). The Court is correct that nothing in section 1963(a)(1) explicitly provides that the interest to be forfeited must be in existence at the time of conviction. However, it is also true that nothing in that section suggests that the government may seize *any* property equivalent in value to the interest acquired or maintained in violation of section 1962. Certainly, until today, this Court did not consider such a broad interpretation to be dictated by the words of the statute. In *United States v. McManigal*, 708 F.2d 276, 289 (7th Cir. 1983) (reaffirmed in *United States v. McManigal*, 723 F.2d 580, 581 (7th Cir. 1983)); *United States v. Alexander*, 741 F.2d 962, 968 (7th Cir.1984) and an unpublished order in this case, *United States v. Ginsburg*, 753 F.2d 1079 (7th Cir.1985), panels of this Court have interpreted the section contrary to the Court's interpretation of the same provision today. These conflicting opinions offer at least some evidence that the "plain language" of section 1963(a)(1) is not as clear as the Court suggests.

Other courts certainly have not considered the language to be clear. In *United States v. Martino*, 681 F.2d 952 (5th Cir.1982), the Fifth Circuit, while not deciding whether the government had an obligation to trace and identify the current form of monetary proceeds before it collected on a forfeiture order, recognized that the statutory language was ambiguous. *Id.* at 960–61. In reviewing that case, the Supreme Court also noted that the statute was not a model of clarity. *Russello*, 104 S.Ct. at 304 n. 3 (1983).

Certainly, in amending the statute in 1984, Congress did not believe that the previous language clearly mandated the result reached by the Court today. Indeed, the legislative history of the amended statute notes the ambiguity of its predecessor. The Senate Report stated that the General Accounting Office attributed the failure of forfeiture statutes (including the one at issue in this case) partly to "the numerous limitations and ambiguities of the statutes." S.Rep. No. 225, 98th Cong., 1st Sess. 191–92 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3374, 3375.

---

2. *See generally* Storey, *RICO Forfeitures: A General View*, in Techniques in the Investigation and Prosecution of Organized Crime 296 (G. Blakey ed. 1980).

3. *See United States v. McManigal*, 708 F.2d 276, 289 (7th Cir.1983) (reaffirmed in *United States v. McManigal*, 723 F.2d 580, 581 (7th Cir.1983)). *See also United States v. Ginsburg*, 753 F.2d 1079 (7th Cir.1985) (The panel in this case, after citing *Alexander* and *McManigal*, wrote, "[n]othing that the government argues persuades us that these cases should be overruled."); *United*

*States v. Alexander*, 741 F.2d 962, 968 (7th Cir. 1984).

4. In its Report on the Comprehensive Crime Control Act of 1983, Pub.L. No. 98–473 (1984), the Committee on the Judiciary, United States Senate, noted that the General Accounting Office found the current forfeiture provisions replete with limitations and ambiguities. The new bill was intended to address these ambiguities. S.Rep. No. 225, 98th Cong., 1st Sess. 191–92 (1983).

## II.

Since the wording of the statute is not clear, it is necessary to turn to its legislative history. *Blum v. Stenson*, 465 U.S. 886, ——, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The legislative history with respect to the forfeiture provision is not extensive. It is evident that Congress wanted to fashion a forfeiture provision. However, there is some evidence that it did not intend to enact a provision which would reach all of the defendant's property whether or not obtained in violation of section 1962 or traceable to such funds. The Senate Committee on the Judiciary incorporated into its report on the forfeiture provision the Attorney General's observations:

It is felt that this revival of the concept of forfeiture as a criminal penalty, limited as it is in Section 1963(a) to one's interest in the enterprise which is the subject of the specific offense involved here, and not extending to any other property of the convicted offender, is a matter of Congressional wisdom rather than of constitutional power.

S. REP. No. 612, 91st Cong., 1st Sess. 80 (1969).

The lack of extensive legislative history supports the view that Congress intended something other than the all-encompassing provision fashioned by the Court. Forfeiture is, in American criminal law, a novel remedy. Ever since the days of the American Revolution, it has been regarded with deep suspicion.[5] While law enforcement authorities need special weapons to combat organized crime and might well require an expanded forfeiture provision, the Court ought to presume that Congress, acting against this historical background, would approach the matter carefully and would not employ vague language to fashion such a far-reaching remedy. If Congress had wanted to implement the drastic remedy formulated today by the Court, it knew how to do so. It has employed unequivocal language to achieve a similar result elsewhere. For instance, section 6331(a) of the Internal Revenue Code provides that the government may collect the taxes of a delinquent taxpayer "by levy upon all property and rights to property ... belonging to such person." 26 U.S.C. § 6331(a). *See generally United States v. National Bank of Commerce*, —— U.S. ——, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Similar language could have been used here if Congress had in fact intended the result which the Court reaches today.

The decision to subject to forfeiture all of the defendant's property and not just that connected to the criminal activity is a very significant policy choice. It affects not only the ability of the Government to curtail organized crime but also the capacity of the convicted individual to return someday to a lawful pursuit and to support his family. It is not asking too much for the Court to insist that the Congress—not the Judiciary—expressly make that policy choice.

The 98th Congress, in enacting the Comprehensive Crime Control Act of 1984, certainly did not believe that the predecessor statute at issue here contained such a sweeping provision. The Senate Report, for instance, noted the ambiguities of the statute[6] and also assumed that the only way by which the government could ensure the presence of assets subject to forfeiture after conviction was through the use of a

---

**5.** The Constitution limits punishment for treason to forfeiture of the convicted individual's life estate. U.S.Const. art. III, § 3, cl. 2 provides: "The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted."

The first Congress enacted a statute declaring that "no conviction or judgment for any of the offenses aforesaid shall work corruption of

blood or any forfeiture of estate." 18 U.S.C. § 3563. In 1984, Congress repealed 18 U.S.C. § 3563 effective November 1, 1986. Pub.L. 98–473, 98 Stat. 1987 (1984). Congress replaced section 3563 with 18 U.S.C. § 3554 which permits forfeiture in accordance with RICO, 18 U.S.C. § 1963 or the Comprehensive Drug Abuse and Control Act, 21 U.S.C. § 853.

**6.** *See supra* note 4.

restraining order.[7] More importantly, in formulating a new section which would have permitted precisely what the Court seeks in this case, the Committee referred to the provision as "new to the law."[8]

### III.

The Court assumes that a tracing requirement would place on the government the obligation to prove *beyond a reasonable doubt* that the assets obtained in violation of section 1962 still exist. We see no reason for that assumption. The continued existence of an interest in the enterprise is not an element of the crime proscribed by section 1962. The language of the statute provides no guidance as to how the government ought to meet the burden of showing that the interest it wishes to subject to forfeiture was acquired or maintained in violation of section 1962. Since establishing a burden of proof does not expand the scope of property subject to forfeiture, it is quite proper, in our view, for the Court to require the government to prove by a preponderance of the evidence that the specific property to be seized was acquired or maintained in violation of 18 U.S.C. § 1962. To assist the prosecutor in tracing tangible assets, a rebuttable presumption would arise that the property is subject to forfeiture under section 1963(a) once the government established that: (1) the property to be seized was acquired by the person during the period of the violation of section 1962 or within a reasonable time after the violation; and (2) there was no likely source for the property other than the violation.

### CONCLUSION

The Court eliminates any burden on the government to establish a nexus between the interest to be seized and the violation of section 1962. In effect, the Court permits the government to substitute assets currently owned or even later acquired. The Court thus expands the scope of property subject to forfeiture beyond that clearly intended by Congress. Neither the statute itself nor the legislative history of section 1963(a) supports this judicial expansion. We, therefore, respectfully dissent. We would vacate the forfeiture and remand the case to the district court to permit the government to prove by a preponderance of the evidence that the property it seeks to seize was obtained in violation of section 1962 or is traceable to such property.

---

7. The Senate Report indicated that:
   No mechanism exists in current law to protect against improper transfers or concealment of assets at an earlier stage. Moreover, no standard for issuance of restraining orders is articulated in current statutes. Should a defendant succeed in transferring or concealing his forfeitable assets prior to conviction,

there is no procedure to allow forfeiture of *other* assets of the defendant to satisfy the forfeiture judgment.
S.Rep. No. 225, 98th Cong., 1st Sess. 194 (1983), U.S.Code Cong. & Admin.News 1984, p. 3377.

