909 P.2d 506

**STATE of Arizona, Plaintiff–Appellee,**

v.

**Francisco F. LEYVA and Sylvia Leyva, husband and wife, Defendants–Appellants.**

No. 1 CA–CV 93–0281.

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 28, 1995.

Grant Woods, the Attorney General by Cameron H. Holmes and Sandra L. Janzen Assistant Attorneys General, Phoenix, for Plaintiff–Appellee.

William Rothstein, Nogales, for Defendants–Appellants.

## OPINION

NOYES, Judge.

Defendants ("the Leyvas") challenge a $20,000,000 (TWENTY MILLION DOLLAR) civil forfeiture judgment the State obtained against them following Francisco Leyva's guilty plea in a separate criminal action. Defendants argue that the judgment violates the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment. We agree, in part, and we remand for further litigation on those issues.

This opinion replaces *State v. Leyva*, 199 Ariz.Adv.Rep. 18 (App. September 12, 1995), which we vacated on November 16 after granting the State's motion for reconsideration. The motion convinced us that the September 12 opinion was overbroad, and erred by ordering dismissal of the complaint. In this revised opinion we interpret *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), to require remand, not dismissal, on the double jeopardy issue. We also follow *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and remand on the excessive fines issue.

I

In 1989 Francisco Leyva was indicted for his alleged involvement in a drug-smuggling organization headed by Jose Luis Somoza. In 1990 the State filed a civil forfeiture action against Leyva and his wife, seeking an *in personam* forfeiture judgment based on the conduct for which Leyva was indicted. Both actions involved numerous co-defendants; this appeal involves only the Leyvas and the civil forfeiture action against them.

In 1991 Leyva pleaded guilty to two felonies: conspiracy to commit money laundering in violation of Arizona Revised Statutes Annotated ("A.R.S.") sections 13–1003 and 13–2317 (1989), and illegally conducting an enterprise in violation of A.R.S. section 13–2312 (1989). Leyva's wife was not indicted. In the written factual basis for the guilty pleas, Leyva admitted that from 1987 through 1989 he "assisted in the management and direction of the financial affairs" of the Somoza organization by "accepting drug proceeds on the premises of Pancho's Liquors and elsewhere on behalf of the Somoza enterprise" and by using those proceeds to pay expenses as directed by Somoza. One of those expenses was a million dollar bribe paid to members of the Mexican Federal Judicial Police in October 1989 for release of a Somoza marijuana field they had seized and three Somoza employees they had arrested.

Leyva's plea agreement included the stipulation that he pay a fine and surcharge totalling $20,550 "as and for the costs of criminal investigation and prosecution of this matter." At sentencing, Leyva was placed on probation for five years, with conditions that included nine months in jail and the stipulated fine. After sentencing, the State filed a motion for summary judgment in the civil action, reasoning that "Francisco Franco Leyva pled guilty in the companion criminal matter, CR 89–12526, thereby making himself personally and his marital community civilly liable in this action, CV90–03498." The State cited A.R.S. section 13–2314(G) (1989) (renumbered as section 13–2314(H) (Supp. 1995)), which precludes a defendant "from subsequently denying the essential allegations of the criminal offense of which he was convicted in any civil proceeding."

The State's evidentiary theory to support a $20 million judgment was that "the gain made by the Somoza enterprise, based only on the seizures described within the complaint, is at least 20 million dollars." Ninety percent of this "gain" was based on the State's allegation that the Somoza marijuana field seized by Mexican police in 1989 had a 40-ton crop that, when harvested and processed, would yield 36,000 pounds of marijuana for importation into the United States with a total value of $18 million. The rest of the "gain" was the million dollar bribe, plus various smaller seizures of money and drugs totalling another million dollars. The State reasoned that because the Somoza organization had this gain, and because Leyva was a member of this organization, the State was entitled to a $20 million *in personam* judgment against Leyva and his wife pursuant to A.R.S. section 13–2314(D)(6)(a) (Supp.1995). (We have doubts about basing the amount of an *in personam* forfeiture judgment on the value of property already seized by governmental agencies, but that is not an issue on appeal.)

The Leyvas filed no opposition to the motion for summary judgment, and the trial court granted it in September 1992. After entry of summary judgment the Leyvas argued that they had not opposed it only because they "thought the matter had settled," and they made various efforts to have the judgment set aside, all of which were denied. In April 1993 the court entered formal judgment, which included the following orders:

1. An *in personam* forfeiture judgment is entered against Francisco Franco Leyva, individually, against Sylvia Leyva, as a member of the marital community with Francisco Franco Leyva and against the Leyva marital community, in the amount of $20 million with interest pursuant to A.R.S. § 44–1201 thereon at the rate of ten percent (10%) *per annum* until paid.

2. All property of Francisco Franco Leyva, and all property of the marital community of Francisco Franco Leyva and Sylvia Leyva is forfeited to the State until the *in personam* forfeiture judgment is

satisfied, subject to all applicable provisions of law concerning execution.

3. The property interests of Francisco Franco Leyva and the marital community of Francisco Franco Leyva and Sylvia Leyva in the property listed in Appendix A are forfeited to the State of Arizona. No other property interests in the property listed in Appendix A are forfeited pursuant to this order. [Appendix A listed a parcel of commercial property, a residence, a 1979 Volkswagen, a 1988 Ford, a 1981 Chevrolet pickup truck, a 1975 Ford, a 1975 Chevrolet, two parcels of vacant land, unspecified property seized from the residence, and $24,606.85 in the Pancho's Liquor's bank account.]

. . . .

5. All property collected pursuant to this judgment shall be disposed of in conformance with A.R.S. § 13-4315: [1]

a) If property is sold, the net proceeds of the Defendants' interest shall be credited to the *in personam* judgment.

b) If property is retained for official use, the fair market value of the Defendants['] property interests at the date of the order shall be credited to the *in personam* judgment.

6. Jurisdiction is retained by this court for the purpose of entertaining applications for the enforcement of this judgment.

The Leyvas filed a timely notice of appeal. This Court has jurisdiction pursuant to A.R.S. section 12-2101(B) (1994).

█ The constitutional issues raised by the Leyvas on appeal were not presented to the trial court. Generally, this Court will review an issue only if the parties first presented it to the trial court. *Resolution Trust Corp. v. Foust,* 177 Ariz. 507, 518, 869 P.2d 183, 194 (App.1993). This rule is procedural, not jurisdictional, and its purpose is to facili-

tate the "orderly administration and attainment of justice." *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 503, 733 P.2d 1073, 1086, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987). Although issuing, then vacating, then reissuing an opinion proves the wisdom of the general rule that issues should not be considered for the first time on appeal, we continue to believe that the constitutional issues raised in this appeal are of such importance that they should be addressed. The parties agree and have fully briefed those issues. To the extent that the facts are insufficiently developed for our decision of the issues, we remand for further trial court proceedings in light of the developing law in this area.

## II

█ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "twice put in jeopardy of life or limb" for the same violation of the law. U.S. Const. amend. V. This protection safeguards an individual against three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Halper,* 490 U.S. at 440, 109 S.Ct. at 1897. The Double Jeopardy Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *Taylor v. Sherrill,* 169 Ariz. 335, 338, 819 P.2d 921, 924 (1991) (citing *Benton v. Maryland,* 395 U.S. at 794, 89 S.Ct. at 2062). Article 2, section 10 of the Arizona Constitution contains a Double Jeopardy Clause, and neither party argues that it has a different meaning than its federal counterpart.

█ This case involves the protection against "multiple punishments for the same

1. A.R.S. section 13-4315 (Supp.1995) provides, in part:

A. Any property ... forfeited to the state under this title shall be transferred as requested by the attorney for the state to the seizing agency or to the agency or political subdivision employing the attorney for the state....

B(1). If the property forfeited is money, ... the court shall [order payment of costs of investi-

gation and prosecution] and shall order all excess monies remaining after such returns deposited in the anti-racketeering fund of this state or of the county in which the political subdivision seizing the monies or prosecuting the action is located, established pursuant to § 13-2314.01 or 13-2314.03.

offense." Whether a civil forfeiture action following a criminal conviction is multiple punishment for the same offense depends on two factors: whether the forfeiture action and the criminal action were "separate proceedings," and whether the forfeiture constitutes "punishment." *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994). In this case, the answer to both questions is yes.

■ We summarily dispose of the "separate proceedings" issue. The Ninth Circuit has held that a civil forfeiture action and a criminal action are separate proceedings when, as in this case, they involve the same conduct but are instituted at different times, tried before different fact finders, presided over by different judges, and resolved by separate judgments. *Id.* The Eleventh and Second Circuits would disagree. *See United States v. 18755 N. Bay Rd.,* 13 F.3d 1493, 1499 (11th Cir.1994); *United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). We find the *$405,089.23* case persuasive and will follow the Ninth Circuit on this issue, as we did in *Marzolf v. Superior Court,* — Ariz. —, 912 P.2d 1373 (App.1995).

■ In deciding whether forfeiture constitutes "punishment," we look more to the purpose of the sanction than to its label. A civil sanction may serve remedial, retributive or deterrent purposes, and the Supreme Court has held that the "punishment" question turns on whether the sanction has *any* punitive purpose:

> [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Halper,* 490 U.S. at 448, 109 S.Ct. at 1902.

■ Whether a civil sanction constitutes punishment is determined "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.* at 447, 109 S.Ct. at 1901. "In making this assessment, the labels 'criminal' and 'civil' are not of paramount importance." *Id.* Rather, a sanction is punitive when, as applied in the individual case, it serves the goals of punishment. *Id.* at 448, 109 S.Ct. at 1902. Legislative declaration regarding the nature of the sanction is not of paramount importance. We appreciate that the Arizona legislature has declared that a civil forfeiture under the Arizona racketeering act ("RICO") is "remedial and not punitive." *See* A.R.S. § 13-2314(L) (Supp.1995). Both Divisions of this Court previously have accepted that declaration. *See In re 2120 S. 4th Ave.,* 177 Ariz. 599, 603, 870 P.2d 417, 421 (App.1994); *Rhue v. Dawson,* 173 Ariz. 220, 233, 841 P.2d 215, 228 (App.1992); *In re One 1983 Toyota,* 168 Ariz. 399, 403, 814 P.2d 356, 360 (App.1991). However, the latter two cases are distinguished because they preceded *Austin,* in which the Supreme Court found that a civil forfeiture serves punitive as well as remedial purposes. *Austin,* 509 U.S. at —, 113 S.Ct. at 2812. The Division Two case found that the legislative declaration that civil forfeiture was "remedial and not punitive" meant that *Austin* was "inapplicable." *2120 S. 4th Ave.,* 177 Ariz. at 603, 870 P.2d at 421. We respectfully conclude that this finding is erroneous. A Supreme Court definition of what constitutes "punishment" in a constitutional context cannot be rendered "inapplicable" by legislation with a different definition.

> The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written.... It is emphatically the province and duty of the judicial department to say what the law is.... [That the constitution declares that it is the supreme law of the land] confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument.

*Marbury v. Madison,* 5 U.S. 137, 176, 177, 180, 2 L.Ed. 60 (1803). We hold that the Supreme Court's interpretation of the Constitution, not A.R.S. section 13-2314(L), controls the "punishment" analysis.

■ The State argues that a forfeiture constitutes punishment only if its sole purpose is punitive. A pre-*Austin* Division Two case reached that conclusion, stating "our inquiry narrows to the question of whether the forfeiture cannot be fairly characterized as remedial, but only as a deterrent or retribution." *In re 1632 N. Santa Rita*, 166 Ariz. 197, 200, 801 P.2d 432, 435 (App.1990). In 1990 this was perhaps an arguable interpretation of *Halper*. However, we respectfully conclude that *Austin* compels the conclusion that *1632 N. Santa Rita*'s search for any *remedial* purpose misconstrued *Halper*'s direction to search for any *punitive* purpose:

> Under *United States v. Halper*, the question is whether
>
> forfeiture serves in part to punish, and one need not exclude the possibility that forfeiture serves other purposes to reach that conclusion.

*Austin*, 509 U.S. at —— n. 12, 113 S.Ct. at 2810 n. 12 (citation omitted).

In its motion for summary judgment, the State advised that the Arizona RICO act, A.R.S. sections 13–2301 to –2317 (Supp.1995), was adapted from, and broader than, the federal RICO act, 18 U.S.C. sections 1961 to 1968 (Supp.1995). The State quoted *Russello v. United States*, 464 U.S. 16, 17, 104 S.Ct. 296, 297, 78 L.Ed.2d 17 (1983), for the proposition that "[t]he legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots...." The State quoted from *United States v. Ginsburg*, 773 F.2d 798 (7th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986), to show that RICO civil forfeiture was intended as "a sanction against the individual" and "part of the penalty":

> Since RICO forfeiture is a sanction against the individual defendant rather than a judgment against the property itself, "it follows the defendant as a part of the penalty and thus [the statute] does not require that the government trace [the money], even though the forfeiture is not due until after conviction." [*United States v. Conner*, 752 F.2d 566, 576 (11th Cir.),

*cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985).]

*Ginsburg*, 773 F.2d at 801. The State also cited *Conner* for the proposition that the social policy of the RICO forfeiture statutes was " 'to attack the sources of economic power of organized crime in addition to removing from power and imprisoning those individuals who violate [RICO].' " *Conner*, 752 F.2d at 576 (quoting *United States v. Cauble*, 706 F.2d 1322, 1345 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984)). An Arizona case (cited by neither party) also states that RICO forfeiture serves a punitive purpose:

> Forfeiture proceedings under the authority of A.R.S. §§ 13–2314 to –2317 and by §§ 13–4301 to –4315 are designed to take from a wrongdoer the fruits of the forbidden activity. The proceedings may be civil, but the predicate is criminal activity and the result is punitive.

*State v. $19,238.00 in U.S. Currency*, 157 Ariz. 178, 182, 755 P.2d 1166, 1170 (App. 1987).

In summarizing the federal cases, the State advised the trial court that "a RICO forfeiture judgment is an *in personam* money judgment against the defendant which is satisfiable from any asset the defendant owns or later acquires." *In personam* means "against the person." BLACK'S LAW DICTIONARY 791 (6th ed. 1990). *In personam* forfeitures traditionally have been understood as punishment for criminal wrongdoing; they are "assessments, whether monetary or in-kind, to punish the property owner's criminal conduct...." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2813 (Scalia, J., concurring).

■ The State successfully argued in the trial court that it was entitled to a $20 million *in personam* judgment because RICO forfeiture is an attack on wrongdoers and part of their penalty. On appeal, the State argues that RICO forfeiture is "remedial, not penal" because it removes "instruments" of illegal drug trade and compensates the State for the costs of investigating and prosecuting drug crimes and for expenditures on drug-related social problems. As previously stated, the Supreme Court has rejected this kind of argument by concluding that proof of a reme-

dial purpose is not necessarily proof of no punitive purpose. *Austin*, at —— 113 S.Ct. at 2811. The State's argument ignores the punitive purposes of RICO forfeitures in general, and of this judgment in particular. This judgment is punitive because it requires the Leyvas to pay for "instruments" that already have been removed by various governmental seizures. This judgment is punitive because it takes from the Leyvas all non-exempt property they legally own or presumably ever will own. This judgment is punitive because it is the Leyvas' lifetime indenture to the State of Arizona: a $20 million debt, with interest at ten percent per year.

On appeal, the State asserts that "[p]unishment of any individual simply has no place in the application of remedial forfeitures." The State follows that assertion with a long quotation, part of which is reproduced below, from a Supreme Court case which held that acts of Congress providing for confiscation of rebels' property during the Civil War were a legitimate exercise of the war power of the United States:

> The whole doctrine of confiscation is built upon the foundation that it is an instrument of coercion, which, by depriving an enemy of property within reach of his power, whether within his territory or without it, impairs his ability to resist the confiscating government, while at the same time it furnishes to that government means for carrying on the war. Hence any property which the enemy can use, either by actual appropriation or by the exercise of control over its owner, or which the adherents of the enemy have the power of devoting to the enemy's use, is a proper subject of confiscation.

*Miller v. United States*, 78 U.S. 268, 306, 20 L.Ed. 135 (1870).

The State asserts that "[p]roceeds of racketeering are illegal to possess because their expenditures complete the misallocation of resources," and appends this footnote:

> Recognition of the proceeds of crime for profit as
>> tainted is instinctive, as demonstrated by history. For example, after Judas betrayed Christ for thirty silver pieces, and after he took his own life, the proceeds of

his betrayal were termed "the price of blood". The silver was used to buy a field to bury strangers in (known thereafter as "the field of blood"), Matt. 27:3–8, in a manner that predicted the revolving fund for racketeering suppression in present day Arizona [A.R.S. section 13–2314.01 (Supp.1995) ].

In our opinion, these references to governmental war powers and to the price of blood tend to illustrate further that the purposes of this *in personam* forfeiture are punitive, at least in part. We acknowledge that the State's arguments were more plausible in 1992, when its unopposed motion for summary judgment was granted. Much of our own certainty on the "punishment" analysis begins with *Austin*, which issued in 1993 and stated:

> [F]orfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment.... We turn next to consider whether forfeitures under 21 U.S.C. §§ 881(a)(4) and (7) are properly considered punishment today.
>
> ....
>
> ... We therefore conclude that forfeiture under these [statutes] constitutes "payment to a sovereign as punishment for some offense," [*Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989) ] and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.

*Austin*, 509 U.S. at ——, ——, 113 S.Ct. at 2810, 2812 (footnote omitted). If a civil forfeiture constitutes punishment for purposes of the Excessive Fines Clause, it is also punishment for purposes of the Double Jeopardy Clause. *$405,089.23*, 33 F.3d at 1219.

In conclusion, we hold that the *in personam* forfeiture judgment in this case violates the Double Jeopardy Clause of the Fifth Amendment because it constitutes a second punishment, at least in part. On this record, we cannot decide how much of the forfeiture is punishment within the meaning of *Halper* and *Austin*. The forfeiture arguably serves both remedial and punitive purposes, and the

point where "punitive" begins in this case has not yet been litigated in the trial court. Therefore, remand is necessary. *Halper* is instructive:

> [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction *to the extent that* the second sanction may not *fairly* be characterized as remedial, but only as a deterrent or retribution.
>
> . . . .
>
> ... Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.

490 U.S. at 448–50, 109 S.Ct. at 1902 (footnote omitted) (emphasis added).

██ We do not hold that the State must choose between criminal penalties and civil forfeiture penalties when bringing a wrongdoer to justice; we do hold that when the State decides to pursue both penalties, it must not violate the Double Jeopardy Clause.

### III

Arguing that the forfeiture judgment violates the Excessive Fines Clause, the Leyvas ask that we articulate an excessive fines test. In declining a similar request from Austin, the Supreme Court stated, "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." *Austin*, 509 U.S. at ——, 113 S.Ct. at 2812. The Court remanded the case "for further proceedings consistent with this opinion." *Id.* We will now do the same in this case, for the excessive fines issue has not yet been presented to and decided by the trial court.

### IV

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

KLEINSCHMIDT, P.J., and GARBARINO, J., concur.