NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

RAMILA DE SOUZA DIAS, *Petitioner/Appellee*,

*v.*

ATTILA MADY, *Respondent/Appellant*.

No. 1 CA-CV 23-0610 FC

FILED 08-01-2024

Appeal from the Superior Court in Maricopa County
No. FC2018-055538
The Honorable Andrew J. Russell, Judge

**AFFIRMED**

COUNSEL

Ramila De Souza Dias, Phoenix
*Petitioner/Appellee*

The Law Office of Carrie M. Wilcox PLLC, Phoenix
By Carrie M. Wilcox
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

¶1        Attila Mady ("Father") appeals the superior court's decision modifying parenting time and legal decision-making authority and recalculating the child support awarded to Ramila De Souza Dias ("Mother").  Because the superior court did not abuse its discretion, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2021, the superior court dissolved the parties' marriage, ordered equal parenting time with their two minor children (a daughter and a son who we refer to as "Daughter" and "Son"), and awarded joint legal decision-making authority.

¶3        Beginning in August 2022, Father refused to exercise parenting time with Daughter and later obtained a protective order against her.  When seeking that order, Father alleged that Daughter repeatedly hid from him, falsely accused him of physical abuse, and lied to law enforcement and the Department of Child Safety.  He also alleged he tried to never be alone with her "for fear of her lies" and that he "live[d] in terror" of her.  And he stated he believed Mother was coaching Daughter and that Mother had falsely alleged he tried to murder Daughter and committed acts of sexual abuse.

¶4        Mother filed an emergency motion for custody modification, citing concerns with Father's mental stability.  She sought sole legal decision-making authority and requested an order awarding Father no parenting time with Daughter and reduced parenting time with Son.

¶5        In a joint prehearing statement, Father advised the superior court that he thought Mother had mental health problems and requested the court order her to undergo a psychological evaluation.  He also requested an order permitting Mother only supervised visitation with both children and an adjustment to the child-support calculation in anticipation

of a parenting-time modification. Like Mother, he sought sole legal decision-making authority. He advised the court that the parties were not able to cooperate, and that joint legal decision-making was not possible.

**¶6** Following an evidentiary hearing, the superior court awarded sole legal decision-making authority to Mother. The court maintained equal parenting time between the parties with Son but awarded Father no parenting time with Daughter. The court ordered Father and Daughter to participate in reunification therapy. The court also issued a new child support order. Father moved to alter or amend the child support decision, which the superior court declined to do.

**¶7** Father timely appealed; we have jurisdiction. *See* A.R.S. § 12-2101(A)(2).

## DISCUSSION

### I. Legal Decision-Making Authority and Parenting Time

**¶8** Father argues the superior court erred in the best-interests analysis it conducted to determine legal decision-making authority and parenting time. "We review the superior court's legal decision-making and parenting-time orders for an abuse of discretion." *DeLuna v. Petitto*, 247 Ariz. 420, 423 ¶ 9 (App. 2019). The court abuses its discretion when it commits a legal error in reaching a discretionary decision or when it makes decisions unsupported by the record. *Id*. We accept the court's factual findings unless clearly erroneous. *Id*. "[W]e do not reweigh the evidence" and we "defer to the [superior] court's determinations of witness credibility and the weight given to conflicting evidence." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019).

**¶9** Father argues the superior court viewed the evidence in the light most detrimental to him and that the court's decisions should be viewed as a sanction rather than a determination of the children's best interests. In a contested legal decision-making and parenting time case, the superior court must determine the children's best interests using the factors listed in A.R.S. § 25-403(A) and A.R.S. § 25-403.01(B). *See Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18 (2003) (noting that the best interests of the child are the "paramount" consideration in child custody cases).

**¶10** Contrary to Father's argument, the court utilized the correct legal framework in its decision, which devoted more than four pages to analyzing the children's best interests. That the court took Father's behavior into account when conducting its analysis and ultimately ruled

against him does not mean that the court viewed the evidence in the light most detrimental to Father, that the court was biased against him, or that we will view the court's conclusions as being a disguised sanction. *See State v. Leyva*, 184 Ariz. 439, 443 (App. 1995); *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63 ¶ 30 (App. 2010).

¶11 In support of its modification of legal decision-making authority, the superior court analyzed the factors set forth in A.R.S. § 25-403.01(B) and cited the parties' inability to cooperate effectively, which Father himself conceded was an issue. The court also considered Father's "atrocious" and "offensive" communications with Mother, his admitted misogyny, disruptive behavior at a hotel causing eviction, and his own suturing of Daughter's wound at an urgent care facility without informing Mother—all of which is adequately documented in the record.

¶12 As to parenting time with Daughter, the most important factor supporting the superior court's decision was that Father obtained a protective order against her. Despite promising the court months earlier that he would dismiss that order, Father had not done so at the time of the hearing. He only did so after the hearing. In the superior court's view, that dismissal was "far too little and far too late," and therefore it found that "Father took aggressive steps to ensure that his daughter could not spend time with (or even contact) him for nine months." Based on that finding, the court further found that Father had no relationship with Daughter, "making the current equal parenting time schedule unworkable as to her." The court did not err in making those findings.

¶13 Father asserts that the superior court ignored his testimony that he obtained the protective order to protect himself rather than punish Daughter. But the court's ruling demonstrates it considered Father's testimony. In any event, that testimony does not change the fact that obtaining the protective order against Daughter was relevant to Father's ability to make sound legal decisions regarding his children. *See Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990) ("[D]enial of responsibility supports a finding" that the parent is not "presently willing to or capable of exercising proper and effective parental care and control."). Nor does Father's testimony alter the reality that the protective order, which was still in place at the time of the hearing, made it impossible for Father to exercise parenting time with Daughter.

¶14 Father also claims the superior court ignored previous instances when Mother harassed Father. Father's argument overlooks that the court allowed Father's testimony about Mother's allegedly harassing

behavior and explained it would give that testimony the weight it deserved. The court's ruling did not address Father's testimony, suggesting the court ultimately gave it no weight. Because Mother's allegedly harassing behavior in 2020 and earlier had, at best, a tenuous connection with the parenting-time and legal decision-making issues in 2023, the court did not abuse its discretion in refusing to factor Father's testimony into its decision. *See Lehn*, 246 Ariz. at 284 ¶ 20.

**¶15** Father next accuses the superior court of misrepresenting his testimony regarding medical care that Father—a physician—admittedly provided Daughter. During the hearing, the court asked Father whether he sutured his daughter's wound, the location where the suturing took place, whether anesthesia had been provided, and the veracity of Daughter's version of the events. In its ruling, the court found that Father had sutured Daughter's wound at an urgent care facility, contrary to Daughter's version of the incident. Despite the court's justifiable doubts about an urgent care facility allowing a physician to use its facility in the manner Father claimed, the court found that Father did not commit domestic violence or child abuse. The court did not misrepresent Father's testimony; rather, it found in Father's favor as to this factor of the best-interests test. *See* A.R.S. § 25-403(A)(8).

**¶16** The remainder of Father's challenges to the superior court's decision lack merit. The court's finding that Father had difficulty controlling himself during Mother's testimony was based on its first-hand observation of Father's reactions, which we are not at liberty to second-guess on a cold record. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). That observation was only one reason—and not the most significant—supporting the court's decision.

**¶17** The superior court also did not abuse its discretion when evaluating the children's relationships. *See* A.R.S. § 25-403(A)(2). The court appropriately weighed Son's discomfort with Mother's roommate against the absence of Daughter's relationship with Father's girlfriend. We also defer to the court's finding that the children did not have a home or community to adjust to when with Father because his relocation from residence in hotels to a multi-room residence was only recent. *See Lehn*, 246 Ariz. at 284 ¶ 20.

**¶18** Father does not adequately develop his argument that the superior court clearly erred in finding that the children are doing well in school. *See* A.R.S. § 25-403(A)(3). Although Mother testified Son was "doing extremely bad" in school, she later testified he is "doing okay now."

She also testified Daughter is doing "amazing." Father claims that he "repeatedly stated under oath (and as a rebuttal) that the school had advised Father repeatedly of difficulties with both children." The record does not support that claim. Instead, Father testified that he was unaware of Son's grades because the school did not contact him.

**¶19** Next, Father claims the superior court found that he struggles with significant mental health issues, for which he asserts there is no supporting evidence. *See* A.R.S. § 25-403(A)(5). Yet the court ultimately found no evidence supporting a finding against either party as to their mental or physical health. While the court did include a first-hand observation of the parties' behavior and mental health, that was not an abuse of discretion.

**¶20** Finally, Father asserts the superior court erred in finding that both parties are equally likely to prevent the children from having frequent, meaningful, and continuing contact with the other parent. *See* A.R.S. § 25-403(A)(6). In so finding, the court appropriately relied on the protective order Father obtained against Daughter, which prevented him from having frequent, meaningful, or continuing contact with her. Father finds fault with the superior court for not mentioning Mother's previous allegations that he had kidnapped his children. Those allegations, which the superior court addressed in prior rulings, were not sufficiently material for us to say the court abused its discretion in finding that both parties are equally likely to impede contact with the other parent.

**¶21** In sum, Father has not shown that the superior court abused its discretion in awarding sole legal decision-making authority to Mother, maintaining equal parenting time between the parties as to Son, and awarding Father no parenting time as to Daughter.

## II. Child Support

**¶22** Father also argues the superior court erred in recalculating child support because it attributed only minimum wage income to Mother. Father also argues the court erred in denying his motion to alter or amend its ruling recalculating child support.

**¶23** We review the superior court's modification of child support for an abuse of discretion. *Strait v. Strait*, 223 Ariz. 500, 502 ¶ 6 (App. 2010). We review factual findings for clear error and draw our own legal conclusions from factual findings or implications in the judgment. *Engel v. Landman*, 221 Ariz. 504, 510 ¶ 21 (App. 2009). We review an order denying

a motion to alter or amend a judgment for an abuse of discretion. *See Stock v. Stock*, 250 Ariz. 352, 354 ¶ 5 (App. 2020).

**¶24** Mother's most recent affidavit of financial information listed her monthly income as $1,872. Father told the court in his joint-pretrial statement that Mother earned $2,100 per month. *See Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983) (noting the joint pretrial statement controls the proceedings and has the effect of amending the pleadings unless otherwise modified at trial). Neither party testified about Mother's income. The superior court refused to rely upon the amount of income Mother listed in her affidavit because minimum wage in Arizona equates to $2,400 per month and Mother did not show that she could not work full-time and earn at least minimum wage. The court instead attributed monthly income of $2,400 per month to Mother, $300 more per month than Father claimed she made. The court did not abuse its discretion in fixing Mother's income at $2,400 per month or in subsequently denying Father's motion to alter or amend its ruling recalculating child support.

## CONCLUSION

**¶25** We affirm the superior court's legal decision-making, parenting time, and child support decisions. We deny Father's request for attorney fees. We award costs to Mother upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: TM