985 P.2d 498

The STATE of Arizona, Plaintiff–Appellant,

v.

Francisco F. LEYVA and Sylvia Leyva, husband and wife, Defendants–Appellees.

No. 1 CA–CV 97–0250.

Court of Appeals of Arizona, Division 1, Department E.

May 19, 1998.

Reconsideration Denied Oct. 22, 1998.

Review Denied Sept. 21, 1999.

14

Grant Woods, Attorney General by Cameron H. Holmes, Sandra L. Janzen, Assistant Attorneys General, Phoenix, for Appellant.

William Rothstein, Nogales, for Appellees.

OPINION

TOCI, Judge.

¶ 1  After Francisco Leyva pleaded guilty in a criminal action, the state brought this forfeiture proceeding against Francisco and his wife, Sylvia (the "Leyvas"). The trial court imposed a $20,000,000 civil forfeiture judgment against the Leyvas. On appeal, this court found that the $20,000,000 judgment constituted, at least in part, a second punishment in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *See State v. Leyva*, 184 Ariz. 439, 909 P.2d 506 (App.1995) ("*Leyva I* "). On remand, the parties stipulated that double jeopardy was no longer an issue. The only issue remaining was whether the $10,000,000 judgment sought by the state was an excessive fine under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. The trial court entered judgment against the Leyvas in the amount of $50,000, finding that any amount in excess of $50,000 would be an excessive fine. The state appeals from this judgment. For reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 The facts up to the time of the first appeal appear in detail in *Leyva I*. We therefore set forth a brief statement of the facts prior to *Leyva I* and a brief description of the prior appeal, followed by a more complete discussion of the proceedings following the remand to the trial court.

¶ 3 In 1989, Francisco Leyva was indicted for his involvement in a drug-smuggling organization known as the Somoza Enterprise. In 1990, the state filed a civil forfeiture action against the Leyvas, seeking both *in rem* and *in personam* forfeiture judgments. In 1991, Leyva pleaded guilty to two felonies: conspiracy to commit money laundering and illegally conducting an enterprise. The state then filed a motion for summary judgment in the forfeiture action, which the trial court granted based on the charges to which Leyva pleaded guilty. The trial court eventually entered judgment in the amount of $20,000,000 with interest at the rate of ten percent per year. The Leyvas appealed, raising for the first time the constitutional issues whether the $20,000,000 forfeiture judgment violated either the Double Jeopardy Clause or the Excessive Fines Clause of the United States Constitution. *See* U.S. Const. amends. V, VIII.

¶ 4 In *Leyva I,* this court began with an analysis of the then-existing precedents from the United States Supreme Court and the Ninth Circuit Court of Appeals. We noted that the Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. We then applied the test set forth by the Ninth Circuit in *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994), to determine whether a civil forfeiture action following a criminal conviction is "multiple punishment for the same offense." That test, in turn, was derived from the United States Supreme Court's decisions in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

¶ 5 In applying these precedents, we concluded that the forfeiture ordered by the trial court qualified as "punishment" under the test set forth in *Austin* for determining whether a civil sanction is subject to the limitations of the Excessive Fines Clause. *See Leyva I,* 184 Ariz. at 445, 909 P.2d at 512. We then held, "[i]f a civil forfeiture constitutes punishment for purposes of the Excessive Fines Clause, it is also punishment for purposes of the Double Jeopardy Clause." *Id.* We recognized, however, that the forfeiture arguably served "both remedial and punitive purposes" and therefore remanded the case to the trial court for "further ... proceedings in light of the developing law in this area" to determine "how much of the forfeiture is punishment within the meaning of *Halper* and *Austin.*" *Id.* at 442, 445, 909 P.2d at 509, 512.

¶ 6 After remand, to eliminate the double jeopardy issue, the state requested summary judgment on counts of the civil complaint for which Leyva had not been convicted. The parties later stipulated that double jeopardy no longer was an issue and that the Somoza Enterprise acquired $10,000,000 in proceeds during the relevant time. The trial court granted the state's motion for summary judgment as to liability and later set the amount of the judgment at $50,000, finding that the $10,000,000 requested by the state would be excessive under the Excessive Fines Clause. Specifically, the court applied the Ninth Circuit's two-pronged test set forth in *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, El Dorado, California,* 59 F.3d 974 (9th Cir.1995) (*"El Dorado "*), for determining whether a fine is excessive.

¶ 7 The state filed a motion for reconsideration, arguing that in *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the Supreme Court reversed the Ninth Circuit's *$405,089.23* case. According to the state, the trial court erred by relying on *$405,089.23* in holding that $10,000,000 would be an excessive fine. The trial court denied the state's motion and entered its formal judgment of *in personam* forfeiture against the Leyvas in the amount of $50,000. The court also ordered, pursuant to the parties' stipulation, that the properties seized by the state in the forfeiture action be forfeited up to the value of $50,000, with the

proceeds to be applied to the *in personam* judgment and any excess to be returned to the Leyvas. The state timely appealed.

## II. DISCUSSION

¶ 8 We begin by noting that although the *Ursery* decision reversed the Ninth Circuit's decision in *$405,089.23,* on which this court's decision in *Leyva I* was based, it did not purport to overrule *Austin* and *Halper,* the cases on which the Ninth Circuit's decision was based. The Court in *Ursery* merely explained that the Ninth Circuit had misapplied the cases in holding that a civil forfeiture action following a criminal conviction is multiple punishment for the same offense. The Court noted, "it is absolutely clear that *in rem* civil forfeiture has not historically been regarded as punishment, *as we have understood that term under the Double Jeopardy Clause*" and "*these in rem* civil forfeitures are neither 'punishment' nor criminal *for purposes of the Double Jeopardy Clause.*" 116 S.Ct. at 2149 (emphasis added).

¶ 9 Thus, *Austin*'s holding that *in rem* civil forfeiture proceedings may serve punitive as well as remedial purposes and that these proceedings are subject to the limitations of the Excessive Fines Clause if they " 'cannot fairly be said *solely* to serve a remedial purpose' " remains valid. 509 U.S. at 621, 113 S.Ct. 2801 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. 1892). In any event, the parties agree that the Double Jeopardy Clause is not at issue in this appeal; rather, the only issue is whether the trial court properly applied the law to the facts in the record in finding that a forfeiture judgment in any amount over $50,000 would violate the Excessive Fines Clause.

¶ 10 The state asserts that forfeitures pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 13–2314(D)(6)(a) (Supp.1997) [1] do not constitute "fines" for the purposes of the Eighth Amendment Excessive Fines Clause as described in *Austin.* Thus, according to the state, sanctions imposed under the statute do not require review for "excessiveness." Additionally, the

state asserts that even if forfeitures under the Arizona statute constitute fines, the $10,-000,000 forfeiture requested in this case is "solely remedial" and therefore does not constitute "punishment" for an offense for Eighth Amendment Excessive Fines Clause purposes. Finally, the state asserts that, assuming review for excessiveness is required, the trial court improperly applied the test in determining what amount would be "excessive" in this case. In response, the Leyvas contend that the trial court applied the appropriate test and that the court's finding that any forfeiture amount over $50,-000 would be excessive must be upheld unless it is "clearly wrong."

### A. Are Civil Fines Under Arizona's Racketeering Act Subject To Review For Excessiveness?

¶ 11 In *Austin,* the Supreme Court held that the "Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' " 509 U.S. at 609–10, 113 S.Ct. 2801 (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989)). The Court then noted that "civil proceedings may advance punitive as well as remedial goals," and thus, the question in determining whether the Excessive Fines Clause applies is "not . . . whether forfeiture . . . is civil or criminal, but rather whether it is punishment." *Id.* at 610, 113 S.Ct. 2801.

¶ 12 The Court examined the history of civil forfeiture and concluded that it "historically [has] been understood, at least in part, as punishment." *Id.* at 618, 113 S.Ct. 2801. It next examined the particular statutes at issue to determine whether they were properly considered "punishment." The Court considered several factors in its analysis. First, it noted that neither the statutes nor the legislative history contradicted the historical understanding of forfeiture as punishment. The statutes at issue provided an "innocent owner" defense, thereby focusing the provisions on the culpability of the own-

---

**1.** The state cites to, and the trial court applied, this version of the statute, which was amended in 1994.

er, making them look more like punishment. *Id.* at 619, 113 S.Ct. 2801. Second, the Court noted that the statutorily-authorized forfeitures were tied directly to the commission of drug offenses and that the legislative history confirmed an intention to "deter or punish the enormously profitable trade in dangerous drugs." *Id.* at 620, 113 S.Ct. 2801. Finally, the Court noted that the statutes were not merely remedial because the value of the forfeited assets bore no relation to the costs of law enforcement or damages to society. *Id.* at 621, 113 S.Ct. 2801.

■ ¶ 13 We now apply these factors to Arizona's civil racketeering *in personam* forfeiture statute. *See* A.R.S. § 13–2314. As our courts have recognized, the racketeering forfeiture statute expressly provides that it is intended to be remedial. *In re 2120 S. 4th Ave.*, 177 Ariz. 599, 603, 870 P.2d 417, 421 (App.1994); *Rhue v. Dawson*, 173 Ariz. 220, 233, 841 P.2d 215, 228 (App.1992). Specifically, A.R.S. section 13–2314(L) (Supp.1997) states, "[a] civil action authorized by this section ... is remedial and not punitive...." Contrary to the state's argument, however, *Ursery* does not hold that the legislature's statement of intent is dispositive, or even the primary factor, in determining whether a statute has a punitive purpose so as to subject it to Excessive Fines Clause analysis.

¶ 14 In *Ursery*, the Supreme Court required that a defendant provide the "clearest proof" that a sanction was so punitive that it transformed what was clearly intended as a civil remedy into a criminal penalty *within the meaning of the Double Jeopardy Clause.* 116 S.Ct. at 2148; *see also State v. Geotis*, 187 Ariz. 521, 523, 930 P.2d 1324, 1326 (App. 1996) (citing *Ursery* in requiring "clearest proof" to establish that a forfeiture proceeding is criminal for purposes of double jeopardy analysis). The Court noted, however, that a forfeiture may be subject to review for *excessiveness* under the Eighth Amendment *without* being so punitive that it constitutes punishment for the purposes of the Double Jeopardy Clause. *Ursery*, 116 S.Ct. at 2147. The Court thus distinguished between the proof of punitive purpose needed to bring a statute within the Excessive Fines Clause and the proof of punitive purpose needed to

bring a statute within the Double Jeopardy Clause. In the context of the Excessive Fines Clause, the legislature's stated intent is merely one factor to be considered under *Austin.*

■ ¶ 15 Although the state argues, and we agree, that the statute's lack of an "innocent owner" defense weighs in favor of finding that the forfeiture statute is non-punitive, we find other factors that militate against that conclusion. For example, A.R.S. section 13–2314(D)(6)(a) provides for the forfeiture of property "acquired or maintained by a person in violation of § 13–2312." Section 13–2312 (Supp.1997) makes it a felony to control or conduct an enterprise through racketeering, which is defined as:

> [A]ny act, including any preparatory or completed offense, which is committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, which would be chargeable or indictable under the laws of this state had the act occurred in this state and which would be punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving [certain listed crimes].

A.R.S. § 13–2301(D)(4) (Supp.1997). Thus, forfeiture is tied directly to the commission of criminal offenses, a factor weighing in favor of finding a punitive intent. *See Austin*, 509 U.S. at 620 ("[C]ongress has chosen to tie forfeiture directly to the commission of drug offenses."); *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (tax on dangerous drugs was actually punishment under the Double Jeopardy Clause because it was levied only on those charged with commission of drug crime).

¶ 16 Additionally, the state submitted voluminous documents to the trial court to prove that enforcement pursuant to the statute is essential to the state's efforts to combat criminal racketeering activities. This recognition that the "traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs," *Austin*,

509 U.S. at 620, 113 S.Ct. 2801, is another factor weighing in favor of a finding that the statute has some punitive purpose.

¶ 17 The state also argues that forfeiture under section 13–2314(D)(6)(a) is remedial because it often may operate to prevent crime, not to punish past conduct, as evidenced by cases which have upheld forfeiture based on conduct that would not have been punishable as a crime. *See, e.g., 1972 Chevrolet Monte Carlo v. State,* 117 Ariz. 461, 573 P.2d 535 (App.1977) (upholding forfeiture of vehicle containing non-useable amount of marijuana seeds and debris); *$10,098.00 in U.S. Currency v. Dimitriou,* 175 Ariz. 237, 854 P.2d 1223 (App.1993) (affirming forfeiture of cash *intended* for use, but not actually used, to violate relevant statute). Although this argument may support the proposition that the forfeiture statute is not intended *solely* to punish,[2] it does not prove that the forfeiture statute is intended *solely* for remedial purposes. Just as some cases uphold forfeiture based on conduct that may not be punishable under the criminal code, others have upheld forfeiture based on conduct for which defendants already had been convicted and sentenced. The mere fact that the statute is drafted broadly enough to encompass both types of cases does not mean there is no punitive intent.

¶ 18 The state also asserts that the statute is not "punitive" because the forfeitures are "structured" as a civil compensatory remedy, rather than as a punishment commensurate with the defendant's culpability. This argument does not, however, prove that the *sole* intent is remedial. As the Court in *Austin* noted, "dramatic variations in the value of conveyances and real property" undercut any argument that forfeiture of those items is "a reasonable form of liquidated damages." 509 U.S. at 621, 113 S.Ct. 2801. In this case, the state seeks to recover *"in personam* forfeiture" of the Leyvas' interest in "[a]ny property or interest in property acquired or maintained by the person in violation of § 13–2312." *See* A.R.S. § 13–2314(D)(6)(a). This claim differs from that in

cases such as *One Lot Emerald Cut Stones v. United States,* in which the claimed penalty is directly related to the damages caused by the activity leading to the forfeiture. 409 U.S. 232, 233 n. 2, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (statute at issue required forfeiture of the illegally-imported item and payment of a penalty equal to the value of the article).

¶ 19 Additionally, the state asserts that the Leyvas are subject to joint and several liability under A.R.S. section 13–2314(E) (Supp.1997), which provides:

> A person who is liable for conduct described in subsection (D), paragraph 6, subdivision (a), (b) or (c) of this section is liable for the total value of all interests in property described in those subdivisions. The court shall enter an order of forfeiture against the person in the amount of the total value of all those interests less the value of any interests that are forfeited before or at the time of the entry of the final judgment.

Thus, the state essentially seeks a judgment against the Leyvas for a sum of money equal to the value of any property which any of the persons involved in the Somoza Enterprise ever acquired or maintained in violation of the racketeering statutes. *See* A.R.S. § 13–2314(D)(6)(a). Such a forfeiture has " 'absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.' " *Austin,* 509 U.S. at 621, 113 S.Ct. 2801 (quoting *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Rather, the forfeiture appears designed, *at least in part,* to punish the Leyvas for their criminal involvement in the Somoza Enterprise.

¶ 20 Furthermore, as Justice Scalia recognized in his concurring opinion in *Austin, in personam* forfeitures generally are designed as "assessments, whether monetary or in kind, to punish the property owner's criminal conduct," while *in rem* forfeitures generally are designed as "confiscations of property rights based on improper use of the property, regardless of whether the owner has violated the law." 509 U.S. at 624, 113

---

**2.** It could, alternatively, support an argument that the racketeering statute is used to punish

those "wrongdoers" who are not punishable under the criminal code.

S.Ct. 2801. Thus, *in personam* forfeitures generally appear in the criminal forfeiture context, while *in rem* forfeitures generally are civil in nature. Arizona's statutes appear to be unique in providing for civil *in personam* forfeitures, which is another indication of at least some punitive purpose.

¶ 21 Finally, the state asserts that A.R.S. section 13–2314(D)(6)(a), by its terms, seeks to recover only illegal items and/or "proceeds" of crime and that because these things are illegal to possess, the statutes are therefore "purely remedial." The state argues that the profits of crime are "dangerous or illegal" and therefore subject to seizure, much like the guns in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), or the smuggled goods in *Emerald Cut Stones*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438. *See also $10,098.00*, 175 Ariz. 237, 854 P.2d 1223 (upholding forfeiture of funds used in "reverse buy" operation).

¶ 22 The statute at issue here, however, as well as the forfeiture order issued by the trial court, provide not only for *in rem* forfeiture, but also for *in personam* forfeiture of assets and joint and several liability. Thus, the statute does not limit the state to the confiscation of illegal or dangerous items and property or funds directly traceable to a crime. The forfeiture statute also allows the state to essentially seek a judgment that the Leyvas are jointly and severally liable for all of the profits earned by any and all members of the entire Somoza Enterprise during a specified period, regardless of whether the Leyvas possess or ever have possessed such "proceeds." The scope of the provision indicates it is not seeking to remedy an immediate danger, but to punish persons who have engaged in criminal activity.

¶ 23 " '[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' " *Austin*, 509 U.S. at 621, 113 S.Ct. 2801 (quoting *Halper*, 490 U.S. at 448, 109 S.Ct. 1892). Because several of the factors point to a finding that Arizona's forfeiture statute serves not only a remedial

purpose, but also a deterrent or retributive purpose, we conclude that forfeiture under this statute constitutes " 'payment to a sovereign as punishment for some offense,' " and therefore is subject to the limitations of the Excessive Fines Clause. *See Austin*, 509 U.S. at 622, 113 S.Ct. 2801 (quoting *Browning–Ferris*, 492 U.S. at 265, 109 S.Ct. 2909).

**B. The Excessive Fines Test**

¶ 24 The parties apparently agree that the correct test for "excessiveness" under the Eighth Amendment Excessive Fines Clause is set forth in *El Dorado*, 59 F.3d 974, although the state asserts the test must be "adjusted" in light of *Ursery* and *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996). In *El Dorado*, the Ninth Circuit described a two-pronged approach to determining whether a forfeiture of property constitutes an excessive fine: first, the property forfeited "must have been an 'instrumentality' of the crime (a 'nexus' must exist between the property and the offense);" and second, "the worth of the property must be 'proportional' (not excessive) to the culpability of the owner." *El Dorado*, 59 F.3d at 982. Here, the trial court stated in its November 14, 1996 minute entry that it applied the *El Dorado* test.

¶ 25 The state asserts that even if the forfeiture statute is subject to the limitations of the Eighth Amendment, forfeitures of proceeds that are directly traceable to an illegal enterprise are not subject to the excessive fines analysis at all. *See, e.g., United States v. Alexander*, 108 F.3d 853, 855 (8th Cir.1997). To the extent that the "proceeds" at issue are the fruits or profits of the defendant's own crime, we agree. The state, however, has urged a broad definition of "proceeds" in this case, which would include profits of crimes committed by others and never received by the Leyvas, but for which they would be jointly and severally liable under the requested *in personam* judgment. If these are "proceeds," then they are subject to the excessive fines analysis.

¶ 26 The state next asserts that, in "proceeds" forfeiture cases, *Bennis* requires

that the proportionality should be between the forfeiture and the actual or potential injury to the state, rather than between the forfeiture and the culpability of the claimant. 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68. *Bennis,* however, was purely an *in rem* proceeding, in which the owner of the property did not face liability in excess of the value of the property involved in the offense. Where the state has defined "proceeds" broadly and seeks an *in personam* forfeiture of the sort involved in this case, which could lead to joint and several liability for a substantial amount of money, the trial court does not err in considering the culpability of the claimant. *See Alexander,* 108 F.3d at 855, 857 (addressing criminal *in personam* forfeiture).

### 1. The Instrumentality Test

¶ 27   Under the instrumentality or nexus prong of the *El Dorado* test, "the initial inquiry is whether the property (or the assets for which it has been exchanged in whole or in part) has a close enough relationship to the offense to permit its confiscation to any extent." 59 F.3d at 982. The "burden is on the government to show a substantial connection between the property and the offense." *Id.* at 985.

¶ 28   Here, the property the state sought to forfeit included any and all assets that the Leyvas possessed or may ever possess, up to a value of $10,000,000. The trial court stated in its minute entry that because the state did not seek an *in rem* judgment against the Leyvas, the instrumentality test does not apply. Because the Leyvas have not objected to the trial court's decision not to apply the instrumentality test, we do not consider whether it applies in the context of the *in personam* forfeiture at issue here. We will instead focus on the trial court's application of the proportionality test.

### 2. The Proportionality Test

¶ 29   If there is a substantial connection between the property, or a portion of the property, and the offense "then the claimant has the burden to show that forfeiture of his property would be grossly disproportionate given the nature and extent of his criminal culpability." *Id.*

¶ 30   In determining proportionality, the court explained that the trial court, while "bearing in mind any *in personam* punishment of the owner," should consider the following factors "in determining the *harshness of the forfeiture:* "

(1) the fair market value of the property;

(2) the intangible, subjective value of the property, e.g., whether it is the family home; and

(3) the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition.

*Id.* Additionally, in determining the *culpability* of the owner, the trial court should consider the following factors:

(1) whether the owner was negligent or reckless in allowing the illegal use of his property; or

(2) whether the owner was directly involved in the illegal activity, and to what extent; and

(3) the harm caused by the illegal activity, including (a) (in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community.

*Id.* at 986.

¶ 31   Finally, if the property was an instrumentality of the crime, but the forfeiture appears to be an excessive fine, the forfeiture may be limited "to an appropriate portion or the more poisonously tainted portion of the property." *Id.* at 986–87.

¶ 32   The state asserts that the finding required under the Eighth Amendment is a constitutional determination regarding the limits of statutory liability, not an "expression of preference within the discretionary purview of a sentencing court." While we agree that the forfeitures provided for by the racketeering statute must be enforced except to the extent that they are unconstitutional, the trial court is nevertheless in the best position to evaluate the evidence submitted and determine what is "excessive" in light of all the facts. We therefore will defer to the trial court's fact finding as long as there is evidence in the record to support it, and we will accord deference to the trial court's deci-

sion regarding the constitutional limits of the forfeiture absent clear error.

■ ¶ 33   In its minute entry order, the trial court found:

[T]he Somoza Enterprise had at least 14 marijuana distributors and received millions of dollars in proceeds from the sale of marijuana. Although Defendant's primary role was handling money for the Somoza Enterprise, he did not keep all of those proceeds and he was just one of the many people whose participation made the Somoza Enterprise as large and as successful as it was.

Considering the number of people who participated in the Somoza Enterprise and Defendant's role in it, an award of the total amount that the parties agree was the proceeds from 1987 to 1989 [$10,000,000] is excessive. It is not proportional to the Defendant's culpability. Additionally, the Court of Appeals indicated that a $20 million judgment would be punitive because 'it takes from the Leyvas all non-exempt property they legally own or presumably would own ... it is the Leyvas' lifetime indenture to the State of Arizona.' The same is true of a $10 million dollar judgment. It would likely mean a lifetime indenture to the State. In light of the fact that the State is seeking an *in personam* judgment for an amount far in excess of any amount that they allege Leyva himself received from this enterprise, an *in personam* award of $10 million is unduly harsh.

(Citation omitted.)

¶ 34   In the formal order granting judgment, the trial court made additional detailed findings regarding the illegal activities of the Somoza Enterprise, including that the Somoza Enterprise earned $157,000,000 in proceeds from marijuana sales from 1987 to 1989; that the Enterprise used millions of dollars in proceeds to corrupt the judicial and law enforcement community in Mexico; and that Leyva was a "core member of the Somoza Enterprise ... [although] he was only one of a number of members."

■ ¶ 35   Based on these findings, it appears that the trial court considered all of the relevant factors in applying the proportionality test. The state, however, asserts that the Leyvas submitted insufficient evidence to support a finding that a $10,000,000 judgment would be "unduly harsh." [3] As support for this assertion, the state points to the trial court's finding, set forth in the form of judgment submitted by counsel for the state, that "[n]o evidence was presented concerning how the defendants are paying their bills. No evidence relating to [Francisco Leyva's] net worth was presented."

¶ 36   We note, however, that the record contains an affidavit submitted by Francisco Leyva, in which he alleged that he had been "selling items of personal property in order to survive." In this affidavit, Leyva listed various items of personal property he owned, with his estimate of their values, as well as several debts and his monthly expenses. Leyva did not attempt to state his "net worth" in the affidavit, nor did he state that the assets and debts listed were the only assets he owned or the only debts he owed. Other than the evidence related to the assets seized by the state (and the settlement regarding the Leyvas' home), we have found no other evidence of the Leyvas' assets or net worth in the record. Although it is not a model of clarity, we nevertheless believe that the affidavit permits the inference that the assets and debts listed were the Leyvas' only substantial existing assets and debts and provides adequate information from which the trial court could find, in combination with the other factors of the proportionality test, that a $10,000,000 *in personam* forfeiture judgment would be unduly harsh.

### III. CONCLUSION

¶ 37   The trial court considered all of the appropriate factors in assessing whether the *in personam* forfeiture requested by the state was excessive within the meaning of the Excessive Fines Clause. We find no error in the trial court's decision to limit the amount

**3.**  The state elsewhere argues that the Leyvas' ability to pay is not a valid factor for consideration. In adopting the Ninth Circuit's *El Dorado* test, which includes a determination of the hardship to the defendant, we reject that argument.

of the *in personam* forfeiture to $50,000. We therefore affirm the trial court's judgment.

CONCURRING: JAMES B. SULT, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge.