108 P.3d 251

STATE of Arizona ex rel. Terry
GODDARD, Plaintiff–
Appellee,

v.

Debra GRAVANO, Defendant–Appellant,

1207 E. Secretariat Drive, Tempe,
Defendants In Rem.

State of Arizona ex rel. Terry Goddard,
Plaintiff–Appellee,

v.

Debra Gravano, Defendant–Appellant,

Nos. 1 CA–CV 03–0512, 1 CA–CV 03–0822.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 17, 2005.

Terry Goddard, Attorney General, Phoenix, by Cameron H. Holmes, Assistant Attorney General, for Plaintiff–Appellee.

Cameron A. Morgan, Scottsdale, for Defendant–Appellant.

## OPINION

WEISBERG, J.

¶ 1 Debra Gravano ("Appellant") appeals the grant of partial summary judgment enabling the State of Arizona's civil forfeiture action, as well as an award of attorneys' fees and costs in favor of the State. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Appellant is the business partner and former wife of Salvatore Gravano (collectively "the Gravanos").[1] Following their divorce, she moved to Arizona and bought a home in Tempe and a restaurant in Scottsdale.

¶ 3 By 2000, Appellant was functioning as the banker for the Gravanos' family ecstacy enterprise, known as the Southwest Ecstacy Enterprise. The enterprise's members included Salvatore; their son, Gerard; their daughter, Karen; and David Seabrook, the father of Karen's baby. The enterprise and Gravanos' lavish lifestyle both halted in February 2000 with the arrests of its members.

¶ 4 In June 2000, the State of Arizona filed an *in personam* and *in rem* civil forfeiture lawsuit against the Gravanos pursuant to the Arizona Racketeering Act, Arizona Revised Statutes ("A.R.S.") § 13–2314, and the Arizona Forfeiture Reform Act, A.R.S. §§ 13–4301 to –4315 (1999), seeking approximately $933,750 of drug sale proceeds. The complaint alleged Appellant's participation in the transfer of Gambino Organized Crime Family proceeds to Arizona for the acquisition of three enterprises: Uncle Sal's Inc., doing business as Uncle Sal's Italian Ristorante; Moran Investments, Inc.; and Marathon Development, L.L.C. ("Marathon"). It further alleged that the Gravanos acquired almost $1 million from ecstacy sales in Arizona.

¶ 5 While the State and the Gravanos were negotiating a possible civil settlement in late 2000, prosecutors were at work on a criminal plea agreement. The State's most recent offer in the civil case had just expired when the Gravanos entered guilty pleas in the criminal action. Appellant pled guilty to one count of conducting a criminal enterprise in violation of A.R.S. § 13–2312(B), and received probation. No agreement was reached between Appellant and the State regarding this civil forfeiture action.

¶ 6 Following sentencing, the State moved for summary judgment in the civil forfeiture case. It asserted that Appellant's guilty plea estopped her from denying the facts of her offense, and that the State was entitled to a judgment to be satisfied from the sale of her home and other property. Concentrating on the *in personam* forfeiture action, Appellant cross-moved for summary judgment on the grounds that the imposition of an *in personam* forfeiture violated her double jeopardy rights under the United States and Arizona Constitutions, constituted an unconstitutionally excessive fine, violated her plea agreement, and violated the forfeiture of estate provision in Article 2, Section 16 of the Arizona Constitution.

¶ 7 The trial court granted partial summary judgment to the State, rejected Appellant's challenge to the *in personam* forfeiture action, and entered a Rule 54(b) judgment.[2]

---

1. Appellant contends that she divorced Gravano in 1994. The State, on the other hand, asserts that they remained married. The court did not make a finding on the matter, and it does not affect our analysis in this appeal.

2. The *in personam* forfeiture was initiated by the State pursuant to A.R.S. §§ 13–4313(A), 13–2314(D)(7) and 13–2314(E). A.R.S. § 13–2314(D)(7) provides for forfeiture "of an amount equal to the gain that was acquired or maintained" through commission of the racketeering. Therefore, this appeal concerns only a proceeds-based forfeiture, which is premised upon the disgorgement of the proceeds of a criminal enterprise.

The court also ruled that the State was entitled to attorneys' fees and costs, which Appellant had also opposed. We have consolidated Appellant's appeals from those two rulings.

## DISCUSSION

### Federal Double Jeopardy

¶ 8 Appellant challenges the grant of summary judgment on the forfeiture claim. We determine *de novo* whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). Summary judgment is appropriate "if the facts produced in support of the claim or defense have so little probative value ... that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶ 9 The Double Jeopardy Clause of the United States Constitution provides that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see generally Ferreira v. Superior Ct.*, 189 Ariz. 4, 7, 938 P.2d 53, 56 (App.1996)(Double Jeopardy Clause is enforceable against states through Fourteenth Amendment's Due Process Clause). However, the United States Supreme Court has long recognized that this clause does not prohibit the imposition of additional sanctions that could, "in common parlance," be described as punishment. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (citation omitted). It protects only against multiple criminal punishments for the same offense in successive proceedings. *Hudson v. United States*, 522 U.S. 93, 99, 118

S.Ct. 488, 139 L.Ed.2d 450 (1997) (citations omitted).

¶ 10 Appellant contends that the civil judgment constitutes a second criminal punishment for her criminal offense and therefore violates the federal double jeopardy clause. We, however, disagree because this forfeiture is not a criminal punishment for double jeopardy purposes.

¶ 11 In *United States v. Halper*, the United States Supreme Court held that a civil sanction would constitute punishment for double jeopardy purposes if the sanction imposed were not, on its facts, rationally related to the goals of a civil action. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).[3] In 1997, however, in *Hudson*, the Supreme Court retreated from *Halper*, and directed a different approach. The *Hudson* Court first looked at the forfeiture statute at issue, and asked "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other;'" that is, either civil or criminal. *Hudson*, 522 U.S. at 99, 118 S.Ct. 488. Answering that same question here, we determine that the Arizona racketeering statutes, which underpin this forfeiture action, constitute a civil sanction because they are designated as civil, carry a civil burden of proof, and are processed pursuant to the rules of civil procedure.[4]

¶ 12 The next *Hudson* inquiry is whether the statutory scheme is "so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* This second question includes several factors, but prohibits the conclusion that a sanction constitutes a criminal penalty solely because of its onerous effect. The relevant factors are:

---

3. Following *Halper*, this court ruled in *State v. Leyva* that the subject $20,000,000 judgment might violate the *Halper* view of double jeopardy and therefore remanded the case to the trial court for findings. 184 Ariz. 439, 445–46, 909 P.2d 506, 512–13 (App.1995) ("*Leyva I*"). However, we did not hold that every civil forfeiture penalty was necessarily punitive. *Id.* at 446, 909 P.2d at 513. Moreover, the reasoning in *Hudson* has effectively rejected the logic of *Leyva I*.

4. *See* A.R.S. § 13–2314, entitled "Racketeering; civil remedies by this state; definitions"; *see also* § 13–2314(L) ("A civil action authorized by this section ... is remedial and not punitive ..."); and § 13–2314(K)("[t]he standard of proof in actions brought pursuant to this section is the preponderance of the evidence test.").

- whether the sanction involves an affirmative disability or restraint;
- whether it has historically been regarded as a punishment;
- whether it comes into play only on a finding of scienter;
- whether its operation will promote the traditional aims of punishment-retribution and deterrence;
- whether the behavior to which it applies is already a crime;
- whether an alternative purpose to which it may rationally be connected is assignable for it; and
- whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100, 118 S.Ct. 488 (citations omitted). Furthermore, only the "clearest proof" will suffice to override the legislative intent and turn a civil remedy into a criminal penalty. *Id.* at 100, 118 S.Ct. 488 (citation omitted). Answering this second question, we conclude that the civil forfeiture has not been transformed into a criminal penalty.

¶ 13 The Second Circuit reached a similar conclusion in *SEC v. Palmisano,* 135 F.3d 860, 864–65 (2d Cir.1998), *cert. denied,* 525 U.S. 1023, 119 S.Ct. 555, 142 L.Ed.2d 462 (1998), when it applied the *Hudson* analysis to a disgorgement sanction. After the defendant pled guilty to a fraudulent Ponzi-type scheme, the court granted the SEC summary judgment and ordered that the defendant disgorge $9.2 million and pay a civil penalty of $500,000, in addition to the previous $3.8 million criminal restitution order. *Id.* at 863. The court rejected the defendant's double jeopardy challenge as "plainly meritless" in light of *Hudson. Id.* at 864. It found that, under *Hudson's* seven factor test, the disgorgement and the civil monetary penalty were not so punitive in purpose or effect as to override the congressional intent to provide for civil penalties. *Id.* at 864–66.

¶ 14 The *Palmisano* court noted that disgorgement has not been historically viewed

as punishment, but rather, that a disgorgement order has long been recognized as civil. *Id.* at 865–66. The court reasoned that remedies can have a clear and rational purpose apart from punishment; and disgorgement is designed in part to ensure that defendants do not profit from illegal acts; a nonpunitive goal. *Id.,* 135 F.3d at 866. Likewise, here, the proceeds-based forfeiture serves that same non-punitive goal and does not constitute double jeopardy. *See id.; accord State v. Geotis,* 187 Ariz. 521, 523, 930 P.2d 1324, 1326 (App.1996)(holding that Arizona civil forfeiture proceedings are not criminal in nature for purposes of double jeopardy analysis).

¶ 15 In Appellant's view, however, *Hudson* merely created a narrow exception to *Halper,* applicable only when "an *in personam* fine is levied in response to a violation in a regulated industry." But Appellant ignores *Hudson's* specific disavowal of *Halper* for all purposes because the *Halper* test for punitive sanctions had proved "unworkable." *Hudson,* 522 U.S. at 102, 118 S.Ct. 488. *Hudson* recognized that all civil penalties have *some* deterrent effect, and if the test were whether a sanction is *solely* remedial, then no subsequent civil remedy would be beyond the prohibition of the Double Jeopardy Clause. *Id.* The *Hudson* court therefore rejected that approach, and, for the same reasons, we reject Appellant's argument.[5]

### Arizona's Double Jeopardy

■ ¶ 16 Appellant next argues that this forfeiture violates the Arizona Constitution's double jeopardy prohibition, which provides: "No person shall ... be twice put in jeopardy for the same offense." Ariz. Const. art. 2, § 10. She asserts that the Arizona provision requires a different interpretation from that applied to the United States Constitution. We, however, conclude that it does not.

¶ 17 Appellant suggests that Arizona ought to adopt the reasoning of *State v. Nunez,* in

**5.** Because we conclude that the subject forfeiture is not criminal in nature, we do not consider the alternative argument that even if the forfeiture were a criminal sanction, it would not constitute double jeopardy because its underlying offense did not have the same elements as the underlying criminal offense. We also decline to consider whether the statements of Appellant's attorney at the joint change-of-pleas proceeding constituted judicial estoppel that would prevent her from raising the double jeopardy issue on appeal.

which the New Mexico Supreme Court recognized additional state-based double jeopardy rights. 129 N.M. 63, 2 P.3d 264 (1999). There, the State of New Mexico had filed forfeiture complaints against the vehicles of several defendants that allegedly were used to transport illegal drugs, as well as against allegedly illegal proceeds. *Id.* at 270–71. The forfeitures were found to violate the New Mexico Constitution, in part because, unlike Arizona, the New Mexico courts had "always regarded forfeiture as punitive." *Id.* at 272. Moreover, the New Mexico double jeopardy provision differed on its face from the federal double jeopardy double jeopardy provision, providing a fundamental right of "acquiring, possessing and protecting property." *Id.* at 282 (quoting N.M. Const. art. II, § 4). That additional right protected both the vehicles and the proceeds of drug dealing from forfeiture.

¶ 18 Our jurisprudence, however, is different. The language of our Constitution parallels the United States Constitution rather than the New Mexico Constitution. *See Geotis*, 187 Ariz. at 523, 930 P.2d at 1326 (recognizing that the double jeopardy prohibition of the Arizona Constitution is construed consistently with its federal counterpart).[6]

¶ 19 In addition, the New Mexico forfeiture statutes differ markedly from our statutes. The New Mexico statutes evidence no legislative intent to obtain either reimbursement for the government's costs or compensation for the societal costs of the underlying crime. *Nunez*, 2 P.3d at 282–83, 287–88 (citing N.M. Stat. Ann. §§ 30–31—35(E)(2), 30–31—34(G)(1), (2) and (4)). In contrast, Arizona's statutes specifically compensate for societal costs and reimburse the government for the

expenses of investigation and prosecution. A.R.S. § 13–2314(D)(5); A.R.S. § 13–2318. We, therefore, decline to follow New Mexico's path.[7]

## Prohibition Against Excessive Fines

¶ 20 Appellant alternatively argues that her *in personam* sanction violates the federal constitutional clause prohibiting the imposition of excessive fines. U.S. Const. amend. VIII. We, however, conclude otherwise because: (1) the subject forfeiture is remedial, not punitive, and thus not a "fine" under the Excessive Fines Clause; and (2) even if the forfeiture were punitive, it is not grossly disproportionate to the societal damage and governmental expense caused by the criminal enterprise. We review constitutional issues *de novo*. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995).

¶ 21 We first reject Appellant's argument because the forfeiture here is a compensatory sanction reasonably proportionate to the subject damages, which makes it remedial in nature. This conclusion is consistent with the United States Supreme Court's opinion in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). There, the government had sought the forfeiture of $357,144, which the defendant had attempted to take overseas without complying with the currency reporting requirement of 31 U.S.C. § 5316(a)(1)(A). *Id.* at 321, 118 S.Ct. 2028. The Court held that the forfeiture of the full amount would be an unconstitutionally excessive fine because (1) the case involved only a reporting offense unrelated to any illegal activity, and (2) the money was

6. Contrary to Appellant's view, *In the Matter of a 1972 Chevrolet Corvette*, 124 Ariz. 521, 606 P.2d 11 (1980), provides no independent state grounds for a double jeopardy violation. It was not founded upon double jeopardy, but rather upon the right to enforcement of a plea agreement. *Id.* at 523, 606 P.2d at 13.

7. The New Mexico Supreme Court later clarified that the *Nunez* analysis is a particular application of the provisions of the Controlled Substances Act. *City of Albuquerque v. One (1) 1984 White Chevy UT*, 132 N.M.187, 46 P.3d 94, 97 (2002). In that case, the court found that the applicable statute, which forfeited vehicles driven by per-

sons whose licenses had been revoked for DWI offenses, was remedial under *Hudson* because it was designed to protect the public from drunk drivers. *Id.* at 97–99, 118 S.Ct. 488. It reached this conclusion notwithstanding that the statute came into operation only upon the owner's personal commitment of a crime, because the subject statute evidenced a clear deterrent intent, and had an innocent owner protection provision. *Id., see also State v. Kirby*, 133 N.M. 782, 70 P.3d 772, 774, 782–83 (App.2003) (limiting *Nunez* by upholding an indictment after the assessment of a $75,000 civil securities fraud penalty for the same offense).

the proceeds of a legal activity and was to be used to repay a lawful debt. *Id.* at 337–38, 118 S.Ct. 2028.

¶ 22 Although holding that the subject forfeiture was unconstitutional, the *Bajakajian* Court favorably recognized an existing line of cases, embracing both *in personam* and *in rem* forfeitures, that traditionally have not been subject to the excessive fines prohibition because such forfeitures have not been regarded as punishment. *Id.* at 341–44, 118 S.Ct. 2028. Instead, they have been considered to be remedial when reasonably based upon compensation for the social harm done. *Id.* at 331, 342–44, 118 S.Ct. 2028. The court concluded that a proceeds-based forfeiture could not be considered a fine because it "provide[d] a reasonable form of liquidated damages," *id.* at 343 n. 19, 118 S.Ct. 2028 (citation omitted), and was inherently linked to the harm caused. *Id.* at 339–41, 118 S.Ct. 2028. Applying this reasoning, the forfeiture of proceeds in the instant case does not constitute an excessive fine.[8]

¶ 23 Appellant nonetheless argues that a contrary result is required by *State v. Leyva,* 195 Ariz. 13, 985 P.2d 498 (App.1998), *cert. denied,* 529 U.S. 1037, 120 S.Ct. 1531, 146 L.Ed.2d 345 (2000) (*"Leyva II"*). In *Leyva II,* we held a fine to be excessive when imposed on a drug smuggler's wife who was not herself involved in the criminal enterprise. 195 Ariz. at 21–22, ¶ 37, 985 P.2d at 506–07. In contrast, here, Appellant was active in the ecstacy smuggling enterprise and served as its banker. Moreover, the Southwest Ecstasy Enterprise removed ap-

proximately $1 million from Arizona's legitimate economy, damaged its clientele, and caused related losses in health, public safety, and welfare expenses. Even the *Leyva II* court agreed that the forfeiture of proceeds from an illegal enterprise would not be subject to an excessive fines analysis "[t]o the extent that the 'proceeds' at issue are the fruits or profits of the defendant's own crime." *Id.* at 19, ¶ 25, 985 P.2d at 504. Accordingly, *Leyva II* actually supports our conclusion that the subject forfeiture is not excessive because it forfeits only the amounts acquired by the criminal enterprise.

¶ 24 Although the *Leyva II* court admittedly stressed that its forfeiture's *in personam* procedure was a punitive feature, *id.* at 18–19, ¶ 20, 985 P.2d at 503–04, it did not have the benefit of the subsequent guidance in *Bajakajian,* which emphasized the similarity between civil *in personam* and civil *in rem* forfeiture proceedings, holding that a proceeds-based forfeiture would not constitute an excessive fine. *Bajakajian,* 524 U.S. at 331 n. 6, 343 n. 19, 118 S.Ct. 2028. In addition, *Leyva II* incorrectly observed that "Arizona's statutes appear to be unique in providing for civil *in personam* forfeitures, which is another indication of at least some punitive purpose." *Leyva II,* 195 Ariz. at 19, ¶ 20, 985 P.2d at 504. We, however, note that twelve other states employ *in personam* civil forfeitures.[9] Also, at least thirteen states allow for a civil judgment/fine tied directly to the amount obtained · through racketeering or some multiple of it.[10] *Leyva*

---

**8.** Our result further follows the reasoning of *Bajakajian* in that the forfeiture did not punish her for the offense of conducting a criminal enterprise, as Appellant forfeited only the amount that was acquired in exchange for illegal drugs. *See Bajakajian,* 524 U.S. at 331–32, 118 S.Ct. 2028. Moreover, the forfeiture did not depend upon Appellant's criminal culpability. *See id.* at 328, 118 S.Ct. 2028.

**9.** Ark.Code Ann. §§ 5–64–505 to –508(Michie 2003); Ga.Code Ann. § 16–13–49 to –50 (2003); Haw.Rev.Stat. Ann. §§ 712A–1 to—20 (2002); Iowa Code Ann. § 809A.1 to A.25 (West 2003); Kan. Stat. Ann. §§ 60–4101 to –4125 (2002); La.Rev.Stat. Ann. §§ 40:2601 to:2622 (West 2002); Mo. Ann. Stat. §§ 513.600 to .653 (West 2003); N.J. Stat. Ann. 2C:35A–2(West 2003); N.Y. C.P.L.R. 1311 (McKinney 2003); N.C. Gen.

Stat. §§ 75D–1 to D–14 (2003); Tenn.Code Ann. § 39–11–701 to –17 (2003); Utah Code Ann. § 58–37–13 (2003).

**10.** Colo.Rev.Stat. §§ 18–17–101 to –109 (2003) (three times greater of gross gain or gross loss caused); Del.Code Ann., tit. 11, §§ 1501 to 1511 (2003)(same); Fla. Stat. Ann. §§ 895.01 to .09 (West 2003)(same); Miss.Code Ann. §§ 97–43–1 to –9 (2003)(same); Nev.Rev.Stat. §§ 207.350 to .520 (2002)(same); N.J. Stat. Ann. §§ 2C:41–1 to –6.2 (West 2003); Ohio Rev.Code Ann. §§ 2925.41 to .45 (West 2003) (not more than twice the gross profits or other proceeds); Okla. Stat. Ann. Tit. 22 §§ 1401 to 1419 (West 2002)(up to three times greater of gross gain or gross loss caused); Or.Rev.Stat. §§ 166.715 to .735(2001)(same); Tenn.Code Ann. §§ 39–12–201 to –210 (2003)(same); Utah Code Ann.

*II* therefore does not shape the result here.[11]

¶ 25 Moreover, even if this forfeiture were a fine, we disagree with Appellant's contention that it would be grossly disproportionate. The main factor in determining proportionality is whether the forfeiture bears some relationship to the gravity of the conduct it is designed to punish. *Bajakajian,* 524 U.S. at 334–38, 118 S.Ct. 2028. Other relevant factors include whether the violation is related to any other illegal activities, *id.* at 337–38, 118 S.Ct. 2028, and the extent of the harm caused, *id.* at 339, 118 S.Ct. 2028. *See also Leyva II,* 195 Ariz. at 20, ¶ 30, 985 P.2d at 505 (requiring the trial court to consider both the harshness of the forfeiture and the culpability of the owner); *United States v. 817 N.E. 29th Dr., Wilton Manors,* 175 F.3d 1304, 1311 (11th Cir.1999)(interpreting *Bajakajian* and explaining that excessiveness is determined by comparing the amount of the forfeiture to the gravity of the offense, not to the amount of the owner's assets).

¶ 26 Applying these factors, we conclude that, even if this forfeiture were a fine, it would not be grossly disproportionate in light of the weighty penalties imposed by our Legislature for the conduct of the criminal enterprise, which include a sentence of twenty-five years to life (A.R.S. § 13–3410); a fine of three times the value of the drugs involved (A.R.S. § 13–3407(G)); and the forfeiture of all proceeds.[12]

¶ 27 Nor does the joint and several nature of the forfeiture judgment make it excessive because the amounts received by the co-conspirators were reasonably foreseeable by Appellant. This conclusion is consistent with several federal court opinions. *United States v. Bollin,* 264 F.3d 391, 419 (4th Cir.2001); *United States v. Corrado,* 227 F.3d 543, 558 (6th Cir.2000); *United States v. Candelaria–Silva,* 166 F.3d 19, 44 (1st Cir.1999); *United States v. Simmons,* 154 F.3d 765, 769–70 (8th Cir.1998).

¶ 28 For example, in *United States v. Saccoccia,* 823 F.Supp. 994 (D.R.I.1993), *aff'd sub nom. United States v. Hurley,* 63 F.3d 1, 22 (1st Cir.1995), *cert. denied,* 517 U.S. 1105, 116 S.Ct. 1322, 134 L.Ed.2d 474 (1996), the district court upheld a $136,000,000 judgment against a claim of excessiveness for a conspiracy that laundered that amount in drug proceeds. The court reasoned that for purposes of 18 U.S.C. § 1963(a)(3), "a defendant should be deemed to have 'obtained' amounts 'obtained' by co-conspirators in furtherance of the conspiracy to the extent that receipt of those amounts was reasonably foreseeable." *Id.* at 1004. To hold otherwise would allow those engaging in racketeering to retain the fruits of their illegal conduct, defeating the purpose of RICO forfeiture. *Id.* Furthermore, "[i]n most cases, it would be a practical impossibility to determine the

§§ 76–10–1601 to –1609 (2003) (no more than twice the profits); Wash. Rev.Code §§ 9A.82.001 to .904 (2003)(amount of illegal gain); Wis. Stat. Ann. §§ 946.80 to .88 (West 2003)(up to two times greater of gross gain or gross loss caused).

**11.** We further reject Appellant's argument that our decision in *One Residence at 319 E. Fairgrounds Dr.,* 205 Ariz. 403, 71 P.3d 930 (App. 2003), affects this case. There, we upheld the *in rem* forfeiture of a house used as an instrumentality of the underlying crime. Here, we follow a different line of cases when considering a proceeds-based forfeiture.

**12.** Our analysis is also consistent with the plurality opinion in *Harmelin v. Michigan,* 501 U.S. 957, 996, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Justice Kennedy derived four principles guiding an Eighth Amendment analysis, which include:
- The punishment for specific crimes involves a substantive penological judgment "properly within the province of the legislatures, not courts" '
- the Eighth Amendment does not mandate the adoption of any one penological theory,
- sentencing codes inevitably vary state to state,
- and any Eighth Amendment review of a sentence should encompass "objective factors to the maximum possible extent."

*Id.* at 998–1000, 111 S.Ct. 2680. In *Harmelin,* the defendant received a life imprisonment with no possibility of parole for possessing 672 grams of cocaine. The Court concluded that the Michigan Legislature could reasonably find that the goals of retribution and deterrence warranted this term in view of the threats of violence, crime, and social displacement. *Id.* at 1003, 111 S.Ct. 2680. Applying the Arizona statutes to the objective facts of this case, we conclude that Appellant's involvement in the drug enterprise amply supports the sanctions imposed.

precise amount of each conspirator's share in the conspiracy's criminal proceeds." *Id.* In affirming, the First Circuit observed that it is largely fortuitous whether a particular individual conspirator happens to possess funds, and a contrary rule would allow a high-level conspirator to escape liability by requiring couriers to handle the money. *Hurley,* 63 F.3d at 22.

¶ 29 Here, the amounts received by the criminal enterprise were foreseeable to Appellant because of her role as banker. Because the amounts were reasonably foreseeable, Appellant cannot claim that the forfeiture is excessive. Therefore, even if the forfeiture were a fine, it would not have violated the Excessive Fines Clause.

### Civil Forfeiture Does Not Violate Appellant's Plea Agreement

■■■ ¶ 30 Appellant next claims that the State's pursuit of a civil forfeiture action violates her plea agreement. We, however, disagree.

¶ 31 Appellant's plea agreement provides that it does not "in any way compromise or abrogate any civil action, including actions pursuant to A.R.S. § 13–2301, *et seq.,* or § 13–4301, *et seq.*" Appellant agreed at her change-of-plea proceeding that she had read the plea agreement, understood it, discussed it with her counsel, and initialed each paragraph. She, therefore, understood the plea agreement's terms, which specifically allowed for the subsequent civil forfeiture action.[13]

### Forfeiture of Estate

■■■ ¶ 32 Appellant next contends that this forfeiture violates the "forfeiture of estate" provision of the Arizona Constitution, which states: "No conviction shall work corruption of blood, or forfeiture of estate." Ariz. Const. art. 2, § 16. Applying *de novo* review, we again reject Appellant's constitutional interpretation.

¶ 33 Forfeiture of estate dates back to feudal times, when all lands ultimately belonged to the king, and tenants had to render continuing services to satisfy their tenancies and demonstrate loyalty to their lord, king, and society. *United States v. Grande,* 620 F.2d 1026, 1038 (4th Cir.1980). The commission of a felony demonstrated disloyalty. In fact, English law defined "felony" as "an offence which occasions a total forfeiture of either lands or goods or both." *Id.* (quoting 1 J. Bishop, *Commentaries on the Criminal Law* 382–83 (1956 ed.)). Thus, forfeiture of estate provided the legal basis for the reassignment of the felon's property.

¶ 34 Arizona and other states adopting similar constitutional provisions can trace them back to the Act of April 30, 1790, Ch. 9, § 24, 1 Stat. 112, 117, passed by the First Congress: "No conviction or judgment shall work corruption of blood, or any forfeiture of estate." At the time of the Act's enactment, England was still practicing forfeiture of estate. Although no feudal system existed in the United States, many states incorporated similar provisions into their constitutions. *See Morrisey v. Ferguson,* 156 Ariz. 536, 538, 753 P.2d 1192, 1194 (App.1988)(Arizona's constitutional provision "was intended to prohibit the application in Arizona of the early English penal requirement whereby a person convicted of a crime forfeited" his land and personal property to the king).

¶ 35 Of course, while our state constitution prohibits forfeiture of estate, it does not prohibit a proceeds-based forfeiture authorized by statute. Also, forfeiture of estate was triggered by a criminal conviction of a felony offense, *Grande,* 620 F.2d at 1038–39, while a conviction is not an element of this forfeiture. Here, the forfeiture is triggered only by racketeering conduct as defined in A.R.S. § 13–2301(D)(4).

¶ 36 Finally, forfeiture of estate confiscated *all* of the vassal's property because the king reasserted title following the vassal's disloyalty. *Grande,* 620 F.2d at 1038. In

---

13. Appellant unavailingly relies upon *In the Matter of a 1972 Chevrolet Corvette,* 124 Ariz. 521, 606 P.2d 11. In that case, the court affirmed the dismissal of the forfeiture claim because the plea agreement did not list forfeiture as a possible punishment. *Id.* at 523, 606 P.2d at 13. Unlike the defendant in *1972 Chevrolet Corvette,* Appellant's plea agreement specified that it "in no way affects any forfeiture proceedings pursuant to A.R.S. § 13–4301 *et seq.,* § 13–2314, or § 32–1993."

contrast, forfeiture under the racketeering statutes is limited to the amount arising out of the racketeering conduct, and is designed to remove the financial incentives of crime and the financial ability to further engage in crime while compensating victims and reimbursing the State for expenses. *State ex rel. Napolitano v. Gravano,* 204 Ariz. 106, 113, ¶ 24, 60 P.3d 246, 253 (App.2002). We therefore conclude that this forfeiture of racketeering proceeds does not violate the forfeiture of estate provision of the Arizona Constitution.

### Awarding Attorneys' Fees and Costs to State Not Abuse of Discretion

▮ ¶ 37 Appellant next claims that the trial court erred by awarding attorneys' fees and costs to the State under A.R.S. § 13–2314(A). We review such awards under an abuse of discretion standard. *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.,* 198 Ariz. 10, 13, ¶ 12, 6 P.3d 315, 318 (App. 2000). Nonetheless, we hesitate to second guess the trial court on this issue "in view of the [trial court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters." *Chase Bank of Ariz. v. Acosta,* 179 Ariz. 563, 574, 880 P.2d 1109, 1120 (App.1994)(quoting *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985)).

¶ 38 The trial court awarded $805,713.41 in attorneys' fees and costs as requested by the State. Appellant complains that the State's supporting affidavits fail to meet the standard of *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983). That case put the initial burden on counsel to prepare an affidavit indicating the type of services performed, the date the service was performed, the attorney performing the service, and the amount of time spent. *Id.* at 188, 673 P.2d at 932. We conclude that the State has met its burden here.

¶ 39 Our conclusion tracks the recent opinion of Division Two of this court that upheld a similar affidavit. *See Orfaly v. Tucson Symphony Society,* 209 Ariz. 260, 99 P.3d 1030 (App.2004). In that case, the appellants had argued that the fee applications were inadequate under *China Doll* because they contained only broad "block summaries" of the work performed. *Id.,* 266 at ¶ 22, 99 P.3d at 1036. The court rejected the challenge, however, because the *China Doll* requirements are meant to "enable the court to assess the reasonableness of the time incurred." *Id.* 266 at ¶ 23, 99 P.3d at 1036. Because the applications contained enough information to support a reasonableness finding, the court did not find an abuse of discretion. *Id.* Similarly, here, although the State's affidavit only included general descriptions of the work performed, we hold that the description was sufficient for the trial court to assess the reasonableness of the State's request.

¶ 40 The detail in the State's affidavit also compares favorably with the one submitted in *Boltz & Odegaard v. Hohn,* 148 Ariz. 361, 714 P.2d 854 (App.1985). The *Boltz* affidavit listed only general types of services without detailing time spent on individual tasks. *Id.* at 365, 714 P.2d at 858. The *Boltz* court nevertheless approved the application, pointing out that the *China Doll* affidavit was submitted in support of a request for fees on appeal, rather than at trial. *Id.*

¶ 41 We note that, although such detail might have assisted the trial court, it "has other alternatives available to it for acquiring such information such as through an evidentiary hearing." *Id.* Therefore, Appellant's argument also fails because she failed to seek a hearing or file an evidentiary-based opposition in the trial court. As explained in *State ex rel. Corbin v. Tocco:* "It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high." 173 Ariz. 587, 594, 845 P.2d 513, 520 (App.1992)(finding no abuse of discretion in award to the State for all the attorneys' fees requested for civil and criminal racketeering cases). We did not find an abuse of discretion in *Tocco* because the defendant had failed to pursue a specific complaint with factual evidence that the time entries were irrelevant. *Id.* Here, because the trial court was satisfied with the fee information, and Appellant failed to present any specific argument to it as to why the

State's request was inaccurate, we conclude that there was no abuse of discretion.[14]

### Awarding Attorneys' Fees and Costs Does Not Violate Eighth Amendment

¶ 42 Finally, Appellant contends that the award of attorneys' fees and costs violates the Excessive Fines Clause of the Eighth Amendment. We disagree.

¶ 43 As previously stated, *Bajakajian* sets forth the factors necessary for an award to be deemed as punitive under the Excessive Fines Clause. 524 U.S. at 328–44, 118 S.Ct. 2028. We conclude that the award of attorneys' fees and costs, based upon Appellant's liability under the statute, derives from her participation in the enterprise, and not from her criminal culpability. *See id.; see generally* A.R.S. § 13–2301(D)(6)(setting the liability threshold at "actions in concert with racketeering"); Restatement (Second) of Torts § 876 (1979)(the civil liability of persons acting in concert does not require criminal intent).

¶ 44 Furthermore, as discussed above, *Bajakajian* expanded the exception to the Excessive Fines Clause to include civil sanctions serving remedial purposes and linked to the amount of the sanction. *Id.* at 342–43, 118 S.Ct. 2028. The Supreme Court, in *Austin v. United States,* considered these sanctions a form of "liquidated damages." 509 U.S. 602, 621, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Both cases relied upon *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), signaling that sanctions based upon compensation for social harm will not be considered to be punishment for a criminal offense. *See Bajakajian,* 524 U.S. at 343, 118 S.Ct. 2028; *Aus-*

*tin,* 509 U.S. at 621, 113 S.Ct. 2801. Because the award of attorneys' fees and costs here was based upon the actual expenditure of government resources, it was proportional and cannot be considered to be punishment. *See Bajakajian,* 524 U.S. at 343, 118 S.Ct. 2028; *see also United States v. Philip Morris USA,* 310 F.Supp.2d 58 (D.D.C.2004)(holding that a $289 billion civil racketeering suit against cigarette manufacturers for disgorgement of sale proceeds does not implicate the Excessive Fines Clause).[15]

### CONCLUSION

¶ 45 For all the foregoing reasons, we affirm the trial court's judgment.

WINTHROP, P.J. and KONGABLE, Judge Pro Tempore *, concurring.

---

14. We also reject Appellant's argument that the trial court improperly awarded costs against Appellant that were unrelated to her. As in *Tocco,* the State affirmed in its affidavit that all attorneys' fees and costs requested were connected with Appellant's case, *Tocco,* 173 Ariz. at 595, 845 P.2d at 521, even though they included time directed towards co-defendants who were either witnesses against Appellant or her co-conspirators. Appellant did not submit below any evidence that the time entries were irrelevant to the claims against her, and we conclude, as did the trial court, that these listed hours were relevant to Appellant's prosecution.

15. Appellant also reasserts her joint and several liability argument with respect to the award of attorneys' fees and costs, and we reject it for the reasons previously stated.

* The Honorable Kirby Kongable, Judge *Pro Tempore* of the Court of Appeals, Division One, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 31 and A.R.S. §§ 12–145 through 12–147.